G. Kevin Kiely, OSB No. 833950
gkkiely@cablehuston.com
Casey M. Nokes, OSB No. 076641
cnokes@cablehuston.com
Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
CABLE HUSTON LLP
1001 SW Fifth Avenue, Suite 2000
Portland, OR   97204-1136
(503) 224-3092 Telephone
(503) 224-3176 Facsimile

    *Attorneys for Defendant The Bank of Oswego*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| **DAN HEINE**, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>**THE BANK OF OSWEGO**, an Oregon corporation,<br><br>    Defendant. | Civil No.  3:15-cv-01622-SI<br><br>**DEFENDANT'S RESPONSIVE TRIAL BRIEF** |

DEFENDANT'S RESPONSIVE TRIAL BRIEF

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

II.   Mr. Heine Has Stipulated to the Entry of Judgment For the Bank on Its
      Counterclaims in the Amount of $141,645.39.................................................... 1

III.  Mr. Heine's Claims Fail Because the Bank's Articles of Incorporation Contain an
      Advancement Provision that Is Contingent, Not Mandatory................................. 2

      A.    Neither Oregon Law Nor the Bank's Articles of Incorporation Make
            Indemnification or Advancement of Fees Mandatory. ............................ 2

            (1)   Mr. Heine's Construction of the Term "Person Indemnified
                  Hereunder" Does Violence to the Plain Meaning and Structure of
                  the Articles. ..................................................................................... 5

            (2)   Advancing Mr. Heine Fees in This Context Is Prohibited by
                  ORS 707.764. .................................................................................. 10

      B.    The Bank Retained Discretion to Reject Mr. Heine's "Undertaking to
            Repay" Based on His Inability to Pay Debts. ......................................... 11

      C.    Pryor Cashman's Fees and Retention Are Unreasonable. .................... 13

IV.   Even If the Bank Is Permitted to Advance or Reimburse Fees, Such Fees
      Should Be Set-Off by Mr. Heine's Debt or Barred by Estoppel. ..................... 15

      A.    The Principles of Equity Weigh in Favor of Set-Off............................. 16

      B.    Mr. Heine Should Be Estopped From Receiving Advancement from the
            Bank. .................................................................................................. 18

V.    CONCLUSION.................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Advanced Mining Sys., Inc. v. Fricke,*
   *Inc. v. Fricke*, 623 A.2d 82, 18 Del. J. Corp. L. 551 (Del. Ch. 1992) ...................................... 8

*Baldwin v. Bader,*
   No. 08-431-P-H, 2010 WL 891254 (D. Me. Mar. 7, 2010)................................................. 8, 10

*Cox v. Fletcher Allen Health Care,*
   No. 05-cv-180, 2005 WL 2457632 (D. Vt. Oct. 5, 2005)......................................................... 5

*Criterion Interests, Inc. v. Deschutes Club,*
   136 Or. App. 239, 902 P.2d 110 (1995)............................................................................... 3, 4

*Danenberg v. Fitracks, Inc.,*
   58 A.3d 991 (Del. Ch. 2012)..................................................................................................... 7

*DeLucca v. KKAT Mgmt.,*
   No. 1384-N, 2006 Del. Ch. LEXIS 19 (Del. Ch. Jan. 23, 2006) ............................................. 7

*Donahoe v. Eugene Planing Mill,*
   252 Or. 543, 450 P.2d 762 (1969) ........................................................................................ 15

*Douglas v. Tractmanager, Inc.,*
   No. 9073-ML, 2014 Del. Ch. LEXIS 94 (Del. Ch. May 30, 2014) .......................................... 7

*Ficus Inves., Inc. v. Private Capital Mgmt., LLC*
   61 A.D.3d 1 (2009) ................................................................................................................. 14

*Flood v. ClearOne Comms., Inc.,*
   618 F.3d 1110 (10th Cir. 2010) ............................................................................................... 5

*Holley v. Nipro Diagnostics, Inc.,*
   No. 9676-VCP, 2014 Del. Ch. LEXIS 268 (Del. Ch. Dec. 23, 2014) ...................................... 7

*Homestore, Inc. v. Tafeen,*
   888 A.2d 204 (Del. 2005) ............................................................................................. 6, 7, 13

*In re Aguilar,*
   344 S.W.3d 41 (Texas App. 2011) ..................................................................................... 9, 10

*In re Central Banking,*
   C.A. No. 12497, 1993 WL 183692 (Del. Ch. Ct. May 11, 1993).................................... 8, 9, 10

*Kaung v. Cole Nat'l Corp.,*
   884 A.2d 500 (Del. 2005) ................................................................................................. 13, 14

*Marshall v. Wilson,*
   175 Or. 506, 154 P.2d 547 (1944) ........................................................................................ 15

*Reedy v. Elec. Data Sys.*,
   No. 19467, 2002 WL 1358761 (Del. Ch. June 18, 2002) ...................................................... 6, 7

*Sorenson v. Mink*,
   239 F.3d 1140 (9th Cir. 2001) ...................................................................................... 11

*Westar Energy, Inc. v. Wittig*,
   44 Kan. App. 2d 182, 235 P.2d 515 (2010) .................................................................... 13, 14

**Statutes**

ORS 57.255 ............................................................................................................................. 4

ORS 57.260 ............................................................................................................................. 4

ORS 60.397 ............................................................................................................................. 4

ORS 707.746 ........................................................................................................................... 2

ORS 707.748 ........................................................................................................................... 2

ORS 707.752 ....................................................................................................................... 4, 6

ORS 707.764 ..................................................................................................................... 5, 10

RMBCA § 8.53(c) .................................................................................................................. 4

**Other Authorities**

*Limits on a Corporation's Protection of Its Directors and Officers from Personal Liability*,
   1983 Wis. L. Rev. 513 (1983) ....................................................................................... 2

## I.     <u>INTRODUCTION</u>

Plaintiff Dan Heine ("Plaintiff" or "Mr. Heine") is a former officer and director of Defendant The Bank of Oswego ("Defendant" or "Bank"). During his tenure at the Bank, Mr. Heine took out a loan from the Bank in the principal amount of $100,000, promising to pay back the principal, as well as all fees and interest, in full. Mr. Heine also amassed almost $30,000 in credit card debt, again promising to pay back all charges, fees and interest, in full. Yet, Mr. Heine has failed to make any payments on the debts since late 2014. In early 2015, he confessed that he has little income and is unable to make any additional payments. Mr. Heine admits that he owes the Bank $141,645.39 but is insolvent.

In June of 2015, Mr. Heine was indicted in the District of Oregon for criminal charges of conspiracy to commit bank fraud and twenty-six counts of making false bank entries. Despite his outstanding debt, Mr. Heine demanded that the Bank indemnify him and advance his defense fees in the criminal action. Pursuant to the Bank's Articles of Incorporation ("Articles"), and the Oregon Bank Act, the Bank's Board of Directors properly reviewed whether Mr. Heine met the standard of conduct to qualify as a "person indemnified hereunder," determined he did not meet that standard, and denied Mr. Heine's requests.

Despite having access to $3 million in coverage under the Bank's directors and officers insurance policy, Mr. Heine now brings this action, demanding advancement of his New York lawyers' $310-$950 hourly fees and a $400,000 retainer for the criminal action. Mr. Heine's claims not only defy the unambiguous language of the Bank's Articles and Oregon law, but also violate the principles of equity. Mr. Heine has no contractual or statutory right to any of the fees he demands.

## II.     <u>Mr. Heine Has Stipulated to the Entry of Judgment For the Bank on Its Counterclaims in the Amount of $141,645.39.</u>

After the parties submitted their respective trial briefs to the Court last week, the parties entered into a (Second) Agreement and Stipulation (Dkt. No. 53) ("Supplemental Stipulation"). Pursuant to the Supplemental Stipulation, Mr. Heine agreed "to entry of judgment in Defendant's

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 1

favor on Defendant's First, Second, Third and Fourth Counterclaims in the total amount of $141,645.39." (Supp. Stip. ¶ 1.) In addition, both parties agreed to pay their "own costs and expenses (including attorneys' fees) incurred as a result of the Counterclaims." (*Id.* ¶ 6.)

**III.      Mr. Heine's Claims Fail Because the Bank's Articles of Incorporation Contain an Advancement Provision that Is Contingent, Not Mandatory.**

Oregon's Bank Act grants banks ***permission*** to indemnify and advance fees—it does not require indemnification or advancement. The Bank's Articles also do not provide for mandatory indemnification or advancement. Advancement from the Bank is contingent upon the applicant satisfying certain unambiguous conditions.

First, the Board must determine that the applicant is a "person indemnified hereunder" pursuant to Articles VII.A and B. After carefully weighing all of the circumstances, the Board concluded that Mr. Heine did not meet the good faith standard of conduct required and thus did not constitute a "person indemnified hereunder". For this reason, the Board correctly denied Mr. Heine's request for advancement.

In addition, the Board has the discretion to evaluate an applicant's financial ability to repay any advancement. Here, the Board determined that Mr. Heine would not be able to repay any fees advanced by the Bank. For this separate, additional reason, the Bank rightly denied Mr. Heine's request for advancement.

Mr. Heine's demand for Pryor Cashman's New York hourly fees, ranging up to $950, and retainer of $400,000, also is unreasonable. For this third, independent reason, Mr. Heine's request for advancement was properly denied.

**A.      Neither Oregon Law Nor the Bank's Articles of Incorporation Make Indemnification or Advancement of Fees Mandatory.**

Oregon's Bank Act ("Bank Act") grants banks permission to both indemnify and advance fees to current and former directors and officers. ORS 707.746 ("a banking institution may indemnify an individual made a party to a proceeding because the individual is or was a director"); ORS 707.748 ("A banking institution may pay for or reimburse the reasonable

expenses incurred by a director who is a party to a proceeding in advance of final disposition . . .

."). These statutes are expressly permissive; they do not mandate indemnity or fee advancement.

Consistent with these Oregon statutes, the Bank's Articles of Incorporation ("Articles")

also do not mandate indemnity or fee advancement.  Indemnity under the Articles is contingent:

> Subject to the provisions of Sections B, D and E below, the
> Corporation shall indemnify any person who was or is a party or is
> threatened to be made a party to any threatened, pending or
> completed action, suit or proceeding, whether civil, criminal,
> administrative, or investigative (including all appeals), by reason
> of or arising from the fact that the person is or was a director or
> officer of the Corporation . . . *if* the conduct of the person was in
> good faith, the person reasonably believed that such person's
> conduct was in the best interests of the Corporation, and, with
> respect to any criminal proceeding, the person had no reasonable
> cause to believe such person's conduct was unlawful.

Article VII.A (emphasis added).  A former Bank executive like Mr. Heine can only be

indemnified if he meets the standard of conduct following the conditional word "if."  Pursuant to

Article VII.B, in order for an applicant to qualify for indemnification, there must first be an

express determination by (in this case) the Bank's Board that the applicant "met the applicable

standard of conduct set forth in Section A":

> Subject to the provisions of Section D and E below,
> indemnification under Section A of this Article ***shall not be made
> by the Corporation unless it is expressly determined that
> indemnification*** of the person who is or was an officer or director,
> or is or was, serving at the request of the Corporation as a director,
> officer, partner, or trustee of another foreign or domestic
> corporation, partnership, joint venture, trust, employee benefit plan
> or other enterprise, ***is proper in the circumstances because the
> person has met the applicable standard of conduct*** set forth in
> Section A.   That determination may be made by any of the
> following:  (a) By the Board of Directors by majority vote of a
> quorum consisting of directors who are not or were not parties to
> the action, suit or proceeding.

Article VII.B (emphasis added).

/ / /

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 3

The Bank's Articles include a fee advancement provision ("Advancement Provision") that is equally contingent.  Article VII.F limits fee advancement to only those applicants who otherwise qualify as a "person indemnified hereunder," i.e., to such persons who meet the indemnification requirements of Articles VII.A and B.  The Advancement Provision thus preserves a facts and circumstances review of the former officer's conduct that was once a statutory requirement in Oregon.  (*See former* ORS 57.255 and *former* ORS 57.260, attached as Exs. B and C, respectively, to Declaration of Casey M. Nokes in Support of Defendant's Responsive Trial Brief ("Nokes Decl. II").)   For decades, states have sought a balancing act between opposing public policy goals with respect to indemnification and advancement. Business leaders have argued that liberal indemnification provisions are necessary to mitigate their personal exposure to legal proceedings arising from their corporate activities so as to entice capable executives.  But a strong countervailing public policy exists:  overly liberal indemnification and advancement provisions "deflect the critical deterrent effect of personal liability on controlling officials" and create financial risk for shareholders.  *See* Dale Oesterle, *Limits on a Corporation's Protection of Its Directors and Officers from Personal Liability*, 1983 Wis. L. Rev. 513, 514–16 (1983).

The Revised Model Business Corporation Act (the "RMBCA") protects against creating a zero-accountability environment for corporate executives (and the concomitant risk to the company's shareholders) by requiring board authorization for advances to directors.  *See* RMBCA § 8.53(c).  Prior to amendments in 1987, Oregon's statute on corporate indemnity and advancement of fees for directors similarly required board review of whether the applicant met the required standard of conduct for indemnification prior to advancement.  *See former* ORS 57.255 and *former* ORS 57.260.  Under the former Oregon corporate indemnification and advancement provisions, corporations were required—in order to permissively advance fees under ORS 57.260(2)—in each "specific case" to make a "determination that the director . . . has met the applicable standard set forth in ORS 57.255" (which provides a good faith standard).

While Oregon's current corporate advancement statute (ORS 60.397) and the mirroring advancement provision in Oregon's Bank Act (ORS 707.752) no longer require board review of the applicant's conduct prior to advancement, banks and corporations may require such prior review in their articles of incorporation.  In such a case, the bank's articles of incorporation take precedence:

> If articles of incorporation limit indemnification or advance of expenses, any indemnification and advance of expenses are valid only to the extent consistent with the articles of incorporation.

ORS 707.764(2).  Here, the Bank of Oswego has limited advancement to only those applicants who qualify as a "person indemnified hereunder", following the same exact mechanics as the former Oregon indemnity and advancement statutes.[1]  As a result, the Board must first review the applicant's conduct to determine whether the applicant is precluded from indemnification. *See* Articles VII.F and B.

### (1)    Mr. Heine's Construction of the Term "Person Indemnified Hereunder" Does Violence to the Plain Meaning and Structure of the Articles.

By both the plain meaning of the words and the context of the Articles, the term "person indemnified hereunder" is straightforward—a person who meets the standard of conduct in Article VII.A as expressly determined after a review of the "circumstances" as provided in Article VII.B.  In fact, Article VII.B defines when a person is "indemnified" under the Articles: "indemnification under Section A of this Article shall not be made by the Corporation unless it is expressly determined that indemnification of the person . . . is proper in the circumstances because the person has met the applicable standard of conduct set forth in Section A."

/ / /

---

[1] Undoubtedly, numerous Oregon corporations are operating under older articles of incorporation or bylaws that reflect the former statutory mandate for board review to confirm that an applicant for advancement of fees meets the standard of conduct required for indemnification (i.e., good faith).  If the Court accepted Mr. Heine's broad assertion (citing only Delaware law) that such an evaluation is not permitted prior to final adjudication of the underlying criminal litigation, not only the Bank, but many other Oregon corporations will have the plain terms limiting advancement of fees in their articles or bylaws effectively erased.

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 5

Mr. Heine would have this Court either ignore the term "person indemnified hereunder" or read in its place: "any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action . . . by reason of or arising from the fact that the person is or was a director or officer of the Corporation." The problem with ignoring the term "person indemnified hereunder" is that it is contrary to Oregon law. *See Criterion Interests, Inc. v. Deschutes Club*, 136 Or. App. 239, 244–45, 902 P.2d 110 (1995) (in construing a document, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all"). The problem with substituting "person indemnified hereunder" with the class of persons who may be considered for indemnification is that it would insert what has been omitted. *See id*.

Both the Bank and Mr. Heine acknowledge that, with few exceptions, the Bank's Articles follow the structure of the Bank Act's indemnity and advancement provisions. But a key revision of the Bank Act's language stands out when comparing ORS 707.752 and Article VII.F. ORS 707.752 provides that "A banking institution may pay for or reimburse the reasonable expenses incurred by ***a director who is a party to a proceeding*** . . . ." (Emphasis added.) The Bank altered that element of the statutory language when drafting the Advancement Provision so that it reads: "Expenses incurred by a ***person indemnified hereunder*** in defending a . . . suit or proceeding . . . ." (Article VII.F (emphasis added).) Similarly, if the Bank intended to provide advancement of fees to the entire class of persons who are entitled to apply for indemnification, the Advancement Provision would have simply done so as in the other sections of Article VII:

- Section VII.A defines the class of persons who may seek indemnification as: "any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action . . . by reason of or arising from the fact that the person is or was a director or officer of the Corporation or one of its subsidiaries, or is or was serving at the request of the Corporation as a director,

officer, partner, or trustee of another foreign or domestic Corporation, partnership, joint venture, trust, employee benefit plan or other enterprise."

- Section VII.B defines the class of persons who can be determined by the board to be indemnified as: "the person who is or was an officer or director, or is or was, serving at the request of the Corporation as a director, officer, partner, or trustee of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan or other enterprise."

- Section VII.G defines the class of persons who may be the beneficiaries of Bank-purchased insurance as: "any person who is or was a director, officer, employee or agent of the Corporation or one of its subsidiaries or is or was serving at the request of the Corporation as a director, officer, partner, trustee, employee or agent of another foreign or domestic Corporation, partnership, joint venture, trust, employee benefit plan or other enterprise."

Mr. Heine would have the Court ignore this repetition of the class of potential applicants in each of the other Articles and simply conclude that when drafting the Advancement Provision, the authors unintentionally used "person indemnified hereunder" as a shortcut. That interpretation is unreasonable and frustrates the plain purpose of the limitation—the Bank sought to retain a limit on the advancement of fees to those persons who have first been expressly determined to have "met the applicable standard of conduct" described in Article VII.A.

Mr. Heine argues that the Bank's construction of "person indemnified hereunder" is inferior because it "conflates indemnification and advancement" and "whether a director has met the applicable standard of conduct to be entitled to indemnification can be made only after the legal proceeding at issue has concluded." (Plaintiff's Tr. Br. at 18.) Neither argument flies. The argument that the Bank's construction conflates indemnification and advancement is no more than a tautology. A bank can determine by its articles of incorporation the conditions precedent to its obligation to advance fees or even determine not to provide for advancement at all.

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 7

Limiting advancement of fees to applicants who meet the requirements for indemnification under Articles VII.A and B is well within the Bank's power.

Mr. Heine's argument that "whether a director has met the applicable standard of conduct to be entitled to indemnification can be made only after the legal proceeding at issue has concluded" is made without citation and is belied by numerous cases. *See Cox v. Fletcher Allen Health Care*, No. 05-cv-180, 2005 WL 2457632, at *8 (D. Vt. Oct. 5, 2005); *see also Flood v. ClearOne Comms., Inc.*, 618 F.3d 1110, 1113 (10th Cir. 2010). Nothing in the Articles or under Oregon law precludes the Bank's Board from making a determination on whether an applicant merits indemnification under Article VII.B. That conclusion is buttressed by the structure of Articles VII.B and VII.D. Article VII.D provides mandatory indemnification of the applicant upon successful defense. It specifically provides that upon a successful defense, mandatory indemnification will override a determination by the Board pursuant to Article VII.B:

> ***Notwithstanding any other provision of Sections*** A, ***B***, C or D of this Article . . . to the extent a director, officer, employee or agent (including an attorney) is successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Sections A or C of this Article, or in defense of any claim, issue or matter therein, that person shall be indemnified against expenses (including attorneys fees) actually and reasonably incurred by him in connection therewith.

Article VII.B is complementary, providing that it is "subject to the provision of Section D." The structure of the Articles presumes that the Board can make a determination of indemnification upon review of the circumstances in response to the applicant's pre-verdict request for indemnification. If the Court accepted Mr. Heine's false conclusion that the Bank could not conduct a review under Article VII.B until Mr. Heine's criminal trial was finally adjudicated, there would be no reason to state that Article VII.D (providing mandatory indemnification where the applicant is successful on the merits) overrides a Board determination pursuant to Article VII.B.

*/ / /*

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 8

Finally, the cases relied upon by Mr. Heine for the proposition that "the determination of whether a director has met the applicable standard of conduct to be eligible for indemnification can only be made after the legal proceeding at issue has concluded" present fundamentally different provisions in the corporations' formation documents.  Each case presents bylaws (or articles of incorporation) that include mandatory indemnification provisions "to the fullest extent permitted by [Delaware General Corporation Law ("DGCL")]" and advancement provisions that were mandatory upon the applicant's submission of the undertaking to repay and/or affirmation of good faith.  *See Homestore, Inc. v. Tafeen*, 888 A.2d 204 (Del. 2005); *Reedy v. Elec. Data Sys.*, No. 19467, 2002 WL 1358761 (Del. Ch. June 18, 2002); *Holley v. Nipro Diagnostics, Inc.*, No. 9676-VCP, 2014 Del. Ch. LEXIS 268, at **29–30 (Del. Ch. Dec. 23, 2014); *Douglas v. Tractmanager, Inc.*, No. 9073-ML, 2014 Del. Ch. LEXIS 94 (Del. Ch. May 30, 2014); and *DeLucca v. KKAT Mgmt.*, No. 1384-N, 2006 Del. Ch. LEXIS 19, at *1 (Del. Ch. Jan. 23, 2006).

Delaware courts have repeatedly held that if a corporation's founding documents state that the corporation shall indemnify to the fullest extent permitted under the DGCL, the company is bound to indemnify unless forbidden by statute.  *See, e.g., Homestore*, 888 A.2d at 206–07; *Reedy,* 2002 WL 1358761 at *3.  Similarly, Delaware courts have held that such expansive advancement rights are mandatory and not contingent but for the perfunctory submission of an undertaking to repay and/or affirmation of good faith.  *See id.*; *Danenberg v. Fitracks, Inc.*, 58 A.3d 991 (Del. Ch. 2012) ("When a corporation agrees to make mandatory the permissive authority to provide advancement and indemnification conferred by Sections 145(a), (b), and (e) of the [Deleware] General Corporation Law, the corporation confers a contractual fee-shifting right on the covered person.").  It is in that context that the Delaware courts have held that the concepts of indemnity and advancement are legally distinct.  Mr. Heine can point to no case where a court compelled a company to advance fees notwithstanding an express provision making advancement of fees and indemnification contingent upon a finding that the applicant meets a particular standard of conduct for permissive indemnification.

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 9

Contrary to Mr. Heine's assertion, the Bank's construction of "person indemnified hereunder" would not "mean that advancement cannot be decided before the end of the [criminal] action." (Plaintiffs Tr. Br. at 13). Rather, the Board upon receiving Mr. Heine's demand for indemnification and advancement properly determined whether Mr. Heine qualified as a "person indemnified hereunder" by evaluating the circumstances as required by Article VII.B. Nothing in the Articles or under Oregon law precludes the Bank from including a term that makes advancement dependent on a Board vote regarding whether the applicant meets the standard of conduct for indemnification; indeed, that used to be a requirement under Oregon law. Upon reaching the conclusion, after reviewing the circumstances, that Mr. Heine did not meet the standard for indemnification, the Board rightly denied Mr. Heine's advancement request. That does not preclude Mr. Heine from later asserting he has a mandatory right to indemnification if he ultimately prevails in his criminal proceeding, pursuant to Article VII.D. Indeed, the structure of the Articles anticipates just that possibility.

**(2)     Advancing Mr. Heine Fees in This Context Is Prohibited by ORS 707.764.**

As discussed above, the articles of incorporation take precedence over the permissive Bank Act statutes on advancement:

> If articles of incorporation limit indemnification or advance of expenses, any indemnification and advance of expenses are valid only to the extent consistent with the articles of incorporation.

ORS 707.764(2). For the reasons discussed above, the Bank of Oswego has limited advancement to only those applicants who qualify as a "person indemnified hereunder" and therefore the Board must review the applicant's conduct to determine whether the applicant is precluded from indemnification. *See* Articled VII.F and B. An indemnification or advance of expenses following the Board's determination that Mr. Heine did not act in good faith or in the best interest of the Bank would violate ORS 707.764(2).

/ / /

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 10

**B.**    **The Bank Retained Discretion to Reject Mr. Heine's "Undertaking to Repay" Based on His Inability to Pay Debts.**

The Board was not required to and did not accept Mr. Heine's "Undertaking to Repay." In the absence of a term in the Bank's Articles requiring it to advance fees upon the simple submission of an undertaking, the Bank's Board retains discretion to "evaluate the important credit aspects of a decision with respect to advancing expenses." *Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84, 18 Del. J. Corp. L. 551 (Del. Ch. 1992); *see also Baldwin v. Bader*, No. 08-431-P-H, 2010 WL 891254, at *6 (D. Me. Mar. 7, 2010).

Mr. Heine's argument that the Bank did not retain discretion to reject his "Undertaking to Repay" relies on two cases that are inapposite. *See In re Central Banking*, C.A. No. 12497, 1993 WL 183692, at *3 (Del. Ch. Ct. May 11, 1993); *In re Aguilar*, 344 S.W.3d 41, 51 (Texas App. 2011). Neither case presents a contingent advancement provision like the one in the Bank's Articles. Rather, both cases present mandatory advancement provisions and are not persuasive.

The *In re Central Banking* case arose when a bankruptcy plan objector challenged a trustee's plan to put a distribution of the objector's shares into escrow as security against the possibility that the objector may not be able to repay fees advanced to him by the debtor for an underlying litigation. 1993 WL 183692 at *3. The *Central Banking* court concluded that the applicable bylaw and the indemnification agreement created a valid contractual right to mandatory advances of litigation expenses upon his furnishing an undertaking to repay. *Id*. Because the advancement provision was mandatory and did not require a security, the Court ruled that the trustee could not impose security requirements after the fact. *Id*. at *4. The Court specifically held that "by approving the ***mandatory*** indemnification By-law and Indemnification Agreement, CBSI's shareholders contracted away the corporation's right to demand security in these circumstances . . .CBSI cannot be permitted to do retrospectively what it has precluded itself from doing *ex ante*." *Id*. (emphasis added).

Mr. Heine also cites *In re Aguilar* in support of his argument that the Bank did not retain discretion to consider his inability to repay advanced fees. The Court in *In re Aguilar* reversed a

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 11

trial court order denying advancement.  344 S.W.3d at 51.  The advancement provision in

*Aguilar*, like that in *Central Banking*, was mandatory upon delivery of an undertaking to repay

and affirmation of good faith:

> Reasonable expenses incurred by a person who was, is, or
> threatened to be made a named defendant or respondent in a
> Proceeding ***shall be paid*** or reimbursed by the Corporation, in
> advance of the final disposition of the Proceeding, ***and without
> determination of indemnification***, after the Corporation receives a
> written affirmation by the director or officer of his good faith
> belief that he has met the standard of conduct necessary for
> indemnification under this Article in a written undertaking by or on
> behalf of the person to repay the amount paid or reimbursed if it is
> ultimately determined that he has not met that standard or if it is
> ultimately determined that indemnification of the director against
> expenses incurred by him in connection with that proceeding is
> prohibited by law or Section 12.1 hereof. The written undertaking
> described above must be an unlimited general obligation of the
> person but need not be secured. ***The written undertaking may be
> accepted without reference to financial ability to make
> repayment***.

*Id.* (emphasis added).  While the *Aguilar* court construed this provision as not reserving to the

company discretion to consider the applicant's ability to repay, it did so against the backdrop of a

mandatory advancement provision.  *Id.*  The court concluded that the company "has a mandatory

duty to advance defense costs after it receives the written undertaking."  *Id.*

This case presents a different fact pattern.  Whereas the advancement provision in

*Aguilar* expressly requires advancement "without determination of indemnification," the Bank's

Articles are contingent on the applicant being a "person indemnified hereunder."  Accordingly,

the Bank's Articles do not mandate immediate advancement, but instead require a prior standard-

of-conduct review.  That same distinguishing aspect of the Bank's Advancement Provision also

sets this case apart from *Central Banking*.  Under the guidance of *Baldwin*, the Bank's

advancement provision does not mandate advancement, but instead requires a case-by-case

review.  Accordingly, the issue of whether to advance credit to Mr. Heine was retained by the

Board.  *See Baldwin*, 2010 WL 891254 at *6 (where advancement determination is not

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 12

mandated, but rather determined on a case-by-case basis, the issue is left to "the business judgment of the board [to] determin[e] whether the undertaking proffered . . . is sufficient to protect the corporation's interest in repayment").

In the absence of a mandatory advancement provision or clear language stripping the Board of its discretion, the Board retained its ability to reject Mr. Heine's undertaking based on his inability to repay advancements.

### C.   Pryor Cashman's Fees and Retention Are Unreasonable.

Pryor Cashman's New York rates, ranging from $310 to $950 an hour are not Portland market rates and are not reasonable for the defense of Mr. Heine in this case.  Apparently, Mr. Heine is willing to concede this, as he focuses only on the question of whether $640 an hour for Mr. Alberts's services is reasonable in this market.  It is not.

The parties agree that a reasonable fee is the prevailing market rate, which is commonly recognized as rates in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *See Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).  Pryor Cashman's rates, including Mr. Alberts's rate of $640 per hour, are well above the prevailing market rate for white collar criminal defense in Portland. Based on a survey of six of Portland's most prominent federal white collar criminal defense lawyers, an expert on this issue, Ron Hoevet, determined that a reasonable hourly billing rate for white collar criminal defense falls within the $400-$550 range.  (Declaration of Ron Hoevet (Dkt. No. 47) ("Hoevet Decl.") at 2, 4.)

Mr. Heine relies upon the Morones Survey—a survey of Portland commercial litigation firms—to support an argument regarding the market rate for criminal defense lawyers.  The Morones Survey—as self-described—does not collect information from criminal defense law firms:  "[Skerritt and Markowitz] defined their relevant market as each law firm located in the metro Portland area with more than five attorneys specializing in commercial litigation.  They defined 'specializing' as spending more than 50% of their time in the practice of commercial

litigation." (*See* Nokes Decl. II ¶ 2 and Ex. A thereto at 1.)  Quite simply, the survey does not reflect the market rate for federal white collar criminal defense work in Portland.  Accordingly, reliance on the Morones Survey to attempt to rationalize Mr. Alberts's New York rate is misplaced.

Even if the Morones Survey did collect data on white-collar criminal defense attorney rates in Portland, the data referenced by Mr. Heine does not apply to Mr. Alberts.  Mr. Heine asserts that for 2014, the Morones Survey lists "the average rate in the highest category as $621/hour." (Plaintiff's Tr. Br. at 32.)  The category of the Morones Survey that Mr. Heine is actually referencing is the "15 attorneys with highest hourly rates" in Portland engaged in commercial litigation.  (*See* Nokes Decl. II ¶ 2 and Ex. A thereto at 3.)  There is no basis to conclude the Mr. Alberts should be paid commensurately with the very top paid 15 commercial litigation attorneys in Portland, let alone receive a higher rate.  In fact the Morones Survey suggests otherwise—Mr. Alberts, an attorney with fourteen years of experience, is near the middle of the data band for attorneys with 10 to 19 years' experience.  (*See id*.)  According to the Morones Report, Portland-based commercial litigation attorneys of Mr. Alberts's vintage make, on average, $371 per hour.  (*See id.*)

Rather than rely on data drawn from the wrong market, Mr. Hoevet surveyed the very members of the Portland market at issue: he interviewed more than a half dozen prominent white collar criminal defense lawyers in Portland.  Those lawyers have been practicing longer than Mr. Alberts and have credentials similar to his.  (Hoevet Decl. at 4.)  All of the colleagues Mr. Hoevet interviewed have been recognized in Best Lawyers of America under Criminal Defense White Collar and some, like Mr. Alberts, are former federal prosecutors.  (*Id*.)  Based on the relevant market data, Mr. Hoevet concluded that a reasonable hourly billing rate for white collar criminal defense in Portland falls within the range of $400-$550 per hour.  Consequently, Pryor Cashman's rates in excess of $550 are therefore unreasonable.

/ / /

Mr. Heine's request for a trial retainer of $400,000, including $350,000 payable when the trial judge sets a trial date, rather than billing the Bank for expenses and fees as incurred, is contrary to the usual practice in this District when a criminal defendant seeks advancement of defense expenses from his former corporate employer and is unreasonable.  (*Id*. at 2.)  Mr. Heine's expert, Per Ramfjord, was not willing to say he—as a Portland attorney—had ever requested a retainer that large, only that "he had worked with other lawyers who request retainers of up to $1,000,000 for complex matters."  (Report of Per Ramfjord ("Ramfjord Rep.") at 5.) Notably, Mr. Ramfjord does not say whether that happened in the Portland market.  Moreover, the risk elements listed by Mr. Ramfjord to justify such a massive retainer do not take into consideration two major elements:  (1) the Bank is a going concern; and (2) the Bank's D&O Policy provides for $3,000,000 in reasonable defense fees for Mr. Heine and Ms. Yates.  Under these circumstances, Pryor Cashman's requested $400,000 is not a market term in Portland and is not reasonable.  (Hoevet Decl. at 2.)

For these reasons, the Bank rightly objects to Mr. Heine's demand for advancement of fees on the alternate grounds that it is unreasonable.

**IV.**      **Even If the Bank Is Permitted to Advance or Reimburse Fees, Such Fees Should Be Set-Off by Mr. Heine's Debt or Barred by Estoppel.**

Even if the Court interprets the Articles to require advancement, the principles of equity demand that the advancement be reduced or barred completely.  Mr. Heine admits that he owes the Bank $141,645.39 for Loan and Credit Card debt and has consented to judgment against him. In reality though, this debt is uncollectable due to Mr. Heine's insolvency.  Consequently, setting-off Mr. Heine's advancement by the amount of his debt is not only equitable here, but is the Bank's only viable option for recovering on its judgment against Mr. Heine.

In addition, Mr. Heine should be estopped from benefiting from any advancement based on his prior false representation of creditworthiness and subsequent default on his debt to the Bank.  Mr. Heine should be precluded from now asserting that he will undertake to repay the Bank's advancement of fees if he is found guilty in the Criminal Action.

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 15

A.        **The Principles of Equity Weigh in Favor of Set-Off.**

Mr. Heine is insolvent.  He has stipulated to judgment against him in the amount of

$141,645.39 for the Loan and Credit Card debt he owes to the Bank.  (Supp. Stip. ¶ 1.)  He has

not made any payments on this debt for almost a year.  (Declaration of Stephen G. Andrews

("Andrews Decl.") (Dkt. No. 49) ¶ 9.)  Mr. Heine also admitted, by a letter dated January, 2015,

that he has "little income" and was not able to continue making payments on his debt.  (Stip. ¶ 25

and Ex. 8 thereto.)  Furthermore, Mr. Heine confessed that it is more likely than not that he will

be unable to pay the Bank advanced legal expenses incurred in the event of a trial in the Criminal

Action.  (Stip. ¶ 38.)

Other than set-off, the Bank has little chance of ever recovering this debt.  Mr. Heine

does not dispute this reality.  While ignoring any injustice that this uncollectable debt presents to

the Bank, Mr. Heine argues that an advancement proceeding is an inappropriate forum for

litigating claims for set-off or recoupment.  As discussed in the Bank's Trial Memorandum, the

cases cited by Mr. Heine for this proposition are not only non-controlling, but misplaced.  *See*

*Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 510 (Del. 2005); *Westar Energy, Inc. v. Wittig*, 44

Kan. App. 2d 182, 235 P.2d 515 (2010).[2]

In both *Kaung* and *Westar*, companies sought recoupment of previously advanced fees

from their former officers prior to a determination on indemnification.  In *Kaung,* the Delaware

Supreme Court held that the company's recoupment of certain already advanced fees was

premature because no indemnification determination had been made.  884 A.2d at 510.  The

*Westar* Court reached a similar conclusion with respect to a company's request for recoupment

of advanced fees.  44 Kan. App. 2d at 197.  The court reasoned that "it makes sense to hold that

***fees and expenses previously advanced*** must be dealt with later at the indemnification stage . . .

when the officer may or may not be deemed liable for ***all*** fees and expenses.  *Id.* (first emphasis

---

[2] Mr. Heine also referenced *Homestore, Inc. v. Tafeen*, 886 A.2d 502, 505 (Del. 2005).  *Tafeen*, however, did not concern recoupment or set-off arguments.  Rather, the *Tafeen* Court denied a corporation's motion to stay its advancement obligations for alleged financial hardship, as the court determined that the company's financial condition had improved significantly from the time of the motion's filing.

added; second emphasis in original).

The concerns in *Kaung* in *Westar* do not exist here. First, the Bank is not requesting the recoupment of previously advanced fees from Mr. Heine. The Bank is seeking to recover from Mr. Heine a pre-existing, unrelated debt in the amount of $141,645.39. The *Kaung* and *Westar* requests for recoupment of previously advanced fees were premature and could not be decided until after indemnification was resolved. Here, however, Mr. Heine's six-figure debt is in no way contingent upon the Bank's indemnification decision or Mr. Heine's criminal conviction. Moreover, the insolvency of the officers was not at issue in *Kaung* and *Westar*, but is a primary issue in this case.

Mr. Heine further mischaracterizes the holding in *Ficus Investments, Inc. v. Private Capital Management, LLC*, 61 A.D.3d 1 (N.Y. 1st Dep't 2009). In *Ficus*, a company sued its former directors and officers for allegedly misappropriating company funds and assets. The company's Operating Agreement included a mandatory advancement provision for certain members and managers. *Id.* at 7. The agreement also contained a section prohibiting duplication of advancement payments—i.e., amounts that would qualify under the agreement as advancement of expenses that were received from another source. *Id.* at 10. The company argued that the funds that the defendants allegedly misappropriated qualified as advancement of expenses that were received from another source. *Id.* The court disagreed, holding that the company had not yet proven that the funds had been misappropriated, and even if so, they did not qualify as duplication payments since "they were in no way connected with indemnification or advancement or intended to be used for any such purpose." *Id.*

Unlike *Ficus*, the Bank's Articles do not contain a "duplication of payments" exception to advancement. Nor is the Bank's request for set-off based on the language of the Articles. The Bank also is not suing Mr. Heine in this action for his conduct that is the subject of the Criminal Action. In contrast to the defendants in *Ficus*, Mr. Heine has admitted that he owes the Bank $141,645.39. The Bank is asking for set-off here in hopes of actually recovering on this

DEFENDANT'S RESPONSIVE TRIAL BRIEF – Page 17

stipulated debt.

In light of Mr. Heine's insolvency, justice warrants setting off any advancement or reimbursement to Mr. Heine in the amount of his stipulated judgment for $141,645.39.

**B.    Mr. Heine Should Be Estopped From Receiving Advancement from the Bank.**

Mr. Heine's prior false representation of creditworthiness and subsequent default on debt taken from the Bank precludes him from now asserting that he will undertake to repay the Bank's advancement of fees if he is found guilty in the Criminal Action.  Under the doctrine of equitable estoppel, "a person may be precluded by his act or conduct, or silence when it was his duty to speak, from asserting a right which he otherwise would have had." *Marshall v. Wilson*, 175 Or. 506, 518, 154 P.2d 547 (1944).  To constitute an equitable estoppel, or estoppel by conduct, there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it." *Donahoe v. Eugene Planing Mill*, 252 Or. 543, 545, 450 P.2d 762 (1969).

On or around June 15, 2011, Mr. Heine, as the borrower, and the Bank, as the lender, entered into a Credit Agreement and Disclosure (as at any time amended, the "Loan Agreement").  (Stip. ¶ 14; Declaration of Casey M. Nokes ("Nokes Decl. I") (Dkt. No. 40) Ex. A.)  In support of that credit, Mr. Heine represented that he was able to and would repay the debt as required under the Loan Agreement.  On October 20, 2014, Mr. Heine renewed the false representation that he was able to and would repay the loan with interest, by June 15, 2015.  (Nokes Decl. I, Ex. A at 1–3.)  In fact, Mr. Heine knew that he could not.  At that time Mr. Heine knew he was already unable to pay on his debts as they came due, including roughly $35,000 of credit card debt.  (Andrews Decl. Ex. A at 4–6.)  The Bank relied on Mr. Heine's representation to its detriment, extending Heine's repayment period several months.  Mr. Heine did not repay the Bank.  (Andrews Decl. ¶ 9.)  As a result, Mr. Heine is and should be equitably estopped from

representing his creditworthiness to the Bank in the form of an Undertaking to Repay his fees incurred in defending himself in the criminal proceeding. *Donahoe*, 252 Or. at 545. Even if he would otherwise have had a right to submit and have the Bank accept his Undertaking to Repay, that right is precluded by his prior conduct. *Marshall*, 175 Or. at 518.

**V.       CONCLUSION**

For all the reasons provided above and in the Bank's Trial Memorandum (Dkt. No. 46), the Bank respectfully requests that: (i) the Court enter the parties' stipulated judgment for the Bank and against Mr. Heine on the Bank's counterclaims in the amount of $141,645.39; and (ii) that the Court enter judgment for the Bank and against Mr. Heine on his three claims for advancement of fees, fees on fees, and declaratory judgment.

DATED:  October 23, 2015.

CABLE HUSTON LLP

s/ Casey M. Nokes
G. Kevin Kiely, OSB No. 833950
gkkiely@cablehuston.com
Casey M. Nokes, OSB No. 076641
cnokes@cablehuston.com
Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
1001 SW Fifth Avenue, Suite 2000
Portland, OR  97204-1136
Telephone:  (503) 224-3092
Facsimile:  (503) 224-3176

*Attorneys for Defendant The Bank of Oswego*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I directed the original **DEFENDANT THE BANK OF OSWEGO'S RESPONSIVE TRIAL BRIEF** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record as follows:

Caroline Harris Crowne
TONKON TORP LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
caroline.harris.crowne@tonkon.com
(503) 802-2056 Direct Dial
(503) 972-3756 Facsimile

Jeffrey Alberts (Admitted *pro hac vice*)
Bryan T. Mohler (Admitted *pro hac vice*)
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
jalberts@pryorcashman.com
bmohler@pryorcashman.com
(212) 326-0800 Direct Dial
(212) 798-6309 Facsimile

*Attorneys for Plaintiff Dan Heine*

DATED this 23rd day of October 2015.

s/ Casey M. Nokes
G. Kevin Kiely, OSB No. 833950
gkkiely@cablehuston.com
Casey M. Nokes, OSB No. 076641
cnokes@cablehuston.com
Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com

*Attorneys for Defendant The Bank of Oswego*

*4837-7389-9049, v. 4*

Page  1 – CERTIFICATE OF SERVICE