Caroline Harris Crowne, OSB No. 021315
   Direct Dial:  503.802.2056
   Fax:  503.972.3756
   E-Mail:  caroline.harris.crowne@tonkon.com
TONKON TORP LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

Jeffrey Alberts (admitted *pro hac vice*)
Bryan T. Mohler (admitted *pro hac vice*)
   Direct Dial:  212.326.0800
   Fax:  212.798.6309
   E-Mail:  jalberts@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036

Attorneys for Plaintiff Dan Heine

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

## (PORTLAND DIVISION)

| | |
|---|---|
| **DAN HEINE**, | Case No. 3:15-cv-01622-SI |
| Plaintiff, | **RESPONSIVE TRIAL BRIEF** |
| vs. | |
| **THE BANK OF OSWEGO**, | |
| Defendant. | |

## __TABLE OF CONTENTS__

TABLE OF AUTHORITIES ..................................................................................... ii

I.  PRELIMINARY STATEMENT .................................................................... 1

II.  ARGUMENT ............................................................................................... 3

    A.  The Articles Of Incorporation Obligate The
        Bank To Advance Mr. Heine's Defense Costs ........................................ 3

        1.  As A Party To The Criminal Action By Reason Of, And Arising
            From, The Fact That He Was An Officer And Director Of The Bank,
            Mr. Heine Is A "Person Indemnified" Under The Articles Of Incorporation.…5

        2.  The Bank Cannot Refuse To Accept Mr. Heine's Undertaking To Repay.…..12

    B.  The Bank's Set-Off Defense Should Be Rejected ................................... 15

    C.  The Terms Of The Engagement Agreement Are Reasonable ............... 18

III.  CONCLUSION ......................................................................................... 22

# TABLE OF AUTHORITIES

## CASES                                                                          PAGE

*In re Adelphia Communs. Corp.*,
  323 B.R. 345 (S.D.N.Y. 2005) ....................................................................... 17

*In re Aguilar*,
  344 S.W.3d 41 (Tex. App. 2011) ................................................................... 15

*Advanced Mining Sys., Inc. v. Fricke*,
  623 A.2d 82 (Del. Ch. 1992) ......................................................................... 13

*Baldwin v. Bader*,
  No. 08-431-P-H, 2010 U.S. Dist. LEXIS 136689 (D. Me. Mar. 7, 2010) ............................. 13

*Cox v. Fletcher Allen Health Care*,
  No. 05-cv-180, 2005 WL 2457632 (D. Vt. Oct. 5, 2005) .................................. 9, 10

*DeLucca v. KKAT Mgmt.*,
  C.A. No. 1384-N, 2006 Del. Ch. LEXIS 19 (Del. Ch. Jan. 23, 2006) .................... 21

*Douglas v. Tractmanager, Inc.*,
  C.A. No. 9073-ML, 2014 Del. Ch. LEXIS 94 (Del. Ch. May 30, 2014) ........................ 12, 21

*Ficus Invs., Inc. v. Private Capital Mgt., LLC*,
  61 A.D.3d 1 (1st Dep't 2009) ......................................................................... 17

*Flood v. Clearone Communs., Inc.*,
  618 F.3d 1110 (10th Cir. 2010) ................................................................. 9, 10

*Holley v. Nipro Diagnostics, Inc.*,
  No. C.A. No. 9679-VCP, 2014 Del. Ch. LEXIS 268 (Del. Ch. Dec. 23, 2014) ..................... 8

*Homestore, Inc. v. Tafeen*,
  886 A.2d 502 (Del. 2005) ............................................................................ 8

*Homestore, Inc. v. Tafeen*,
  888 A.2d 204 (Del. 2005) ........................................................................... 12

*Imbert v. LCM Interest Holding LLC*,
  C.A. No. 7845-ML, 2013 Del. Ch. LEXIS 126 (Del. Ch. Feb. 7, 2013) .......................... 12, 21

*James v. Clackamas County*,
  299 P.3d 526 (Or. 2013) .............................................................................. 4

*Johnson v. School District No. 12*,
  210 Or. 585 (Or. 1957) .............................................................................. 4

*Kaung v. Cole Nat'l Corp.*,
  884 A.2d 500 (Del. 2005) ........................................................................... 16

**CASES**                                                                          **PAGE**

*Lipson v. Supercuts, Inc.*,
    No. 15074-NCC(JBJ), 1996 Del. Ch. LEXIS 108 (Del. Ch. Sept. 10, 1996) ........................ 17

*Miller v. U.S. Foodservice, Inc.*,
    405 F. Supp. 2d 607 (D. Md. 2005) ................................................................. 15, 17

*Potter v. Cavaletto*,
    No. 3:10-cv-00124-ST(AJB), 2011 U.S. Dist. LEXIS 125118 (D. Or. Oct. 28, 2011) ......... 20

*Religious Tech. Ctr. v. Scott*,
    Nos. 94-55781 & 94-55920 (JTN), 1996 U.S. App. LEXIS 8954
    (9th Cir. Apr. 11, 1996) ............................................................................ 21

*Rocksmore v. Hanson*,
    No. 3:14-cv-01114-MO, 2015 U.S. Dist. LEXIS 23778 (D. Or. Feb. 24, 2015) ..................... 4

*Stockman v. Heartland Indus. Partners, L.P.*,
    No. C.A. No. 4227-VCS, C.A. No. 4427-VCS, 2009 Del. Ch. LEXIS 131
    (Del. Ch. July 14, 2009) ............................................................................ 12

*Sun-Times Media Group, Inc. v. Black*,
    954 A.2d 380 (Del. Ch. 2008) ..................................................................... 16

*Westar Energy, Inc. v. Wittig*,
    235 P.3d 515 (Kan. Ct. App. 2010) ............................................................... 16

*Williams v. RJ Reynolds Tobacco Co.*,
    351 Or. 368 (2011) .............................................................................. 4, 8


**STATUTES**

Fed. R. Civ. P. 54(d) .............................................................................. 21

Oregon Banking Act § 707.748 ...................................................................... 10


**LAW REVIEW**

Andrew J. Morrow, Jr., *Appendix: Task Force Report, Oregon Revised Model Business
Corporation Act*, 30 Willamette L. Rev. 407 (1994) ................................................. 10

Committee on Corporate Laws, *Changes in the Model Business Corporation Act Affecting
Indemnification of Corporate Personnel*, 36 Bus. L. 99 (1980) ................................. 10, 15

Plaintiff Dan Heine, by his undersigned counsel, respectfully submits this brief in response to Defendant's Trial Memorandum.[1]

## I.  **PRELIMINARY STATEMENT**

The Bank seeks to avoid its advancement obligation by eliding the most basic distinction between advancement and indemnification, which is that advancement payments are made *in advance* of the indemnification determination.  The Bank's attempt to make indemnification a precondition to advancement is inconsistent with the express language of the Articles of Incorporation and completely contrary to well-established law, including the very cases upon which the Bank relies.  Moreover, the Bank's interpretation would render superfluous the entire advancement provision of the Articles of Incorporation.

The Bank's assertion that language clarifying that the Bank has the authority to advance fees regardless of Mr. Heine's financial situation somehow enables the Bank to avoid the mandatory advancement based on Mr. Heine's finances is similarly flawed. Courts repeatedly have held that when an agreement states that advancement "shall" be paid, paying advancement is mandatory, regardless of the officer's ability to repay the advancement.

In short, the Court should reject the Bank's effort to redefine advancement and instead enforce the Articles of Incorporation, which provide for mandatory advancement of expenses incurred by a director or officer in defense of a proceeding related to his

---

[1] All capitalized terms not defined herein shall have the same meaning as set forth in Plaintiff's Trial Brief, dated and filed October 16, 2015 (ECF # 51).

PAGE 1 – PLAINTIFF'S RESPONSIVE TRIAL BRIEF

official function upon the presentation by the director or officer of (1) an undertaking to repay advanced defense costs if it is ultimately determined there was no entitlement to indemnification, and (2) an affirmation of a good faith belief that the applicable standard of conduct to qualify for indemnification was met.

The Court also should reject the Bank's attempt to invoke unrelated debt obligations as a basis to offset its advancement obligations. To permit an offset here effectively would deprive Mr. Heine of his advancement right by forcing him to personally fund his legal defense until the offset is satisfied. Such a result would be inequitable, as it would severely undermine Mr. Heine's ability to mount a defense to claims that indisputably arise out of his executive position at the Bank. For this reason, it is well settled that an advancement proceeding – which, by its nature, must provide expedited relief to the officer or director seeking advancement – is an inappropriate forum for litigating a claim for set-off.

Finally, the Bank's characterization of Pryor Cashman's rates and requested retainer payment as "not reasonable" is unavailing. The chief support for this proposition is the observation of Ron Hoevet that Mr. Alberts's hourly rate is higher than the hourly rates of six white collar defense attorneys in the Portland area. Based upon this observation, Mr. Hoevet concluded that an hourly rate of $550 is reasonable. The Bank infers from this that it must be *unreasonable* for Mr. Heine to retain any attorney whose rate is greater than $550. This simplistic mathematical calculation entirely ignores how clients actually select their attorneys. The Bank's view appears to be that it is unreasonable for a client to retain an attorney whose rate is higher than that of other

PAGE 2 – PLAINTIFF'S RESPONSIVE TRIAL BRIEF

qualified attorneys. That ignores the reality that clients frequently – and reasonably – retain attorneys whose hourly rates are higher than that of other qualified attorneys. There are dozens of potential reasons for such a decision, ranging from financial considerations based on efficiency to considerations of the attorney's education, employment history, professional awards, personal references, demeanor, staffing support and technological support. The Court should reject the Bank's simplistic analysis and find that Mr. Alberts's hourly rate is reasonable for the reasons stated in Mr. Ramfjord's declaration. Similarly, the Court should reject the Bank's view that it is unreasonable for an attorney to request a significant trial retainer when the party paying the retainer is a going concern. This conclusion ignores the fact that going concerns regularly pay substantial retainer fees, which are reasonable because even going concerns sometimes fail to pay their legal fees.

## II. <u>ARGUMENT</u>

### A.    **The Articles Of Incorporation Obligate The<br>Bank To Advance Mr. Heine's Defense Costs**

While the Bank is correct that the Articles of Incorporation are to be interpreted in accordance with Oregon's accepted principles of contract interpretation, these principles do not support the Bank's effort to avoid advancement. It is well settled that, "[i]n interpreting a contract, [Oregon courts] seek to implement the intent of the parties to the contract by considering the contract terms in their context . . . . Specifically, [courts] first consider the text of the contractual provision at issue in the context of the contract as a whole." *James v. Clackamas Cnty.*, 299 P.3d 526, 532 (Or. 2013) (citations omitted). "If

the meaning of the provision is clear from the text and context, then the analysis ends." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379-80 (Or. 2011) (citation omitted). In conducting this analysis, Oregon courts "will resist an interpretation of a disputed term that would render another part of the contract meaningless or superfluous." *See Rocksmore v. Hanson*, No. 3:14-cv-01114-MO, 2015 U.S. Dist. LEXIS 23778, at *26-27 (D. Or. Feb. 24, 2015) (citation omitted). "The court must, if possible, construe the contract so as to give effect to all of its provisions." *Williams*, 351 Or. at 379 (citing *Johnson v. School District No. 12*, 210 Or. 585, 592 (Or. 1957).

The Bank argues that by requiring the advancement of expenses to a person "indemnified hereunder," Paragraph VII(F) unambiguously requires a prior determination that the person meets all requirements of indemnification in the Articles of Incorporation. However, in light of the text and context of Paragraph VII(F), "person indemnified hereunder" can only mean a person who is *eligible* for indemnification under the terms of the Articles of Incorporation. As defined in the Articles themselves, this means "any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (including all appeals), by reason of or arising from the fact that the person is or was a director or officer of the Corporation or one of its subsidiaries . . . ." (Stip. Ex. 1 at Art. VII(A).) The Bank's interpretation would render the advancement right meaningless and the entire advancement provision superfluous because it would not be possible to receive advancement payments until after the ultimate indemnification

determination is made (at which point, the right to advancement is no longer useful because indemnification payments will be made).

Similarly, Paragraph VII(F)'s statement that an undertaking to repay "may be accepted [by the Board] without reference to financial ability to make repayment," unambiguously reinforces that the Bank's duty to advance exists independent of, and notwithstanding, any perceived ability or inability on the part of the officer or director to repay in the event it is ultimately determined that he is not entitled to indemnification. (*Id.* Ex. 1 at Art. VII(F).)  The Bank's interpretation – by which the Bank would retain discretion to advance or not advance expenses to a "person indemnified hereunder" depending on its assessment of such person's ability to repay – is irreconcilable with the Bank's mandatory obligation to in all instances advance expenses incurred by a "person indemnified hereunder," which expenses "***shall*** . . . be paid by the [Bank]."  (*Id.* Ex. 1 at Art. VII(F).)

      1.      As A Party To The Criminal Action By Reason Of, And Arising From, The Fact That He Was An Officer And Director Of The Bank, <u>Mr. Heine Is A "Person Indemnified" Under The Articles Of Incorporation</u>

Paragraph VII(F) of the Articles of Incorporation states that expenses incurred by a "person indemnified hereunder in defending a civil, criminal, administrative or investigative action, suit or proceeding . . . shall . . . be paid by the [Bank] in advance of the final disposition of such action, suit or proceeding" upon the presentation by the director or officer of (1) an undertaking to repay advanced defense costs if it is ultimately determined there was no entitlement to indemnification, and (2) an affirmation of a good

faith belief that the applicable standard of conduct to qualify for indemnification was met. (*Id.* Ex. 1 at Art. VII(F) (emphasis added).)

The Bank concedes that Mr. Heine has delivered the requisite undertaking and affirmation, but seeks to justify its denial of Mr. Heine's request for advancement by claiming that Mr. Heine is not a "person indemnified hereunder" and therefore is ineligible for advancement under Paragraph VII(F). To support this argument, the Bank argues that Mr. Heine cannot be a "person indemnified hereunder" unless and until he is determined to be indemnified under the Articles of Incorporation. (Defendant's Br. at 17.)

This interpretation is utterly inconsistent with the context of the advancement provision and would render it meaningless surplusage. An officer or director cannot be determined to be indemnified until the proceeding for which fees are sought is fully adjudicated, at which point advancement is unnecessary, and the Articles of Incorporation would call for indemnification payments, not advancement payments. It is not possible to know that an officer or director is indemnified prior to adjudication of liability, because Paragraph VII(A) of the Articles of Incorporation bars indemnification in a proceeding in which the persons is adjudged liable for certain kinds of wrongful conduct, unless the court makes subsequent, additional findings:

> [N]o indemnification shall be made in connection with a proceeding by or in the right of the [Bank] in which the person was adjuged [sic] liable to the [Bank] or in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for deliberate misconduct in the performance of that person's duty to the [Bank], for any transaction in which the person received an improper personal benefit, for any breach of the duty of loyalty to the [Bank], or for any distribution to shareholders which is unlawful under the Oregon Bank Act, or successor statue [sic], unless and only to the extent that the court in which such action or suit was

brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper.

(Stip. Ex. 1 at Art. VII(A).)

It is not possible to know whether a person charged in an action arising from the fact that the person was an officer of the Bank will be adjudged to have breached a duty to the Bank or to have violated any Oregon banking law until judgment has been entered. Accordingly, it is not possible to determine that an officer charged in such a case is indemnified until judgment is entered in that case. If indemnification were a precondition for advancement, as the Bank suggests, then an officer could not receive advancement until after the advancement right is no longer useful or meaningful and indemnification payment is due.

Just as it is not possible to determine that Mr. Heine is indemnified before judgment is entered, it is not possible to determine that he is *not* indemnified before judgment is entered. Article VII provides for *mandatory* indemnification when the director or officer of the Bank is "successful on the merits" in defense of any action to which he is a party because of being a director or officer of the Bank. (Stip. Ex. 1 at VII(D).) Accordingly, even if a board, a committee, a special legal counsel, or shareholders make a pre-trial determination using the procedures described in Paragraph VII(B) that a person does not meet the prerequisites for indemnification, if that person

ultimately is successful on the merits, then that person is indemnified, *regardless of the pre-trial determination.* [2]

Therefore, if, as the Bank posits, Paragraph VII(F) only requires the Bank to advance expenses to persons who actually are indemnified under the Articles of Incorporation, then the advancement right provided for in the Articles of Incorporation is superfluous. Any "advancement" could only come after an "adjudication of liability" by the court, rendering the distinction between indemnification and advancement (and independent value of an advancement right) no longer discernible. *See Homestore, Inc. v. Tafeen*, 886 A.2d 502, 505 (Del. 2005) (stating that "to be of any value to the executive or director, advancement must be made promptly, otherwise its benefit is forever lost because the failure to advance fees affects the counsel the director may choose and litigation strategy that the executive or director will be able to afford.").

Under Oregon law, such an interpretation, which renders part of the Articles of Incorporation meaningless, must be avoided in favor of a construction that will "give effect to all" of the provisions of the contract. *Williams*, 351 Or. at 379 (citation omitted); *see also Holley v. Nipro Diagnostics, Inc.,* No. 9676-VCP, 2014 Del. Ch. LEXIS 268, at *29-30 (Del. Ch. Dec. 23, 2014) (holding that "indemnification and advancement 'are separate and distinct legal actions' and the 'right to advancement is not dependent on the right to indemnification'" and, therefore, any argument that "advancement necessarily is limited to situations that could qualify for indemnification [is] wrong as a matter of law").

---

[2] Only if the case against Mr. Heine is dismissed without a finding on the merits would the Bank's indemnification obligation depend on the outcome of its board's assessment of Mr. Heine's good faith. (*Id.* Ex. 1 at VII(A).) Therefore, the Bank cannot make a determination on indemnification until a judgment is entered or the case is dismissed.

The Bank has identified no principle of contract interpretation supporting the adoption of an interpretation that would render the advancement provision meaningless.

Nor do the cases cited by the Bank support their interpretation of the phrase "indemnified hereunder."  The advancement provisions in these cases neither include the phrase "indemnified hereunder," nor require an indemnification determination as a precondition to advancement.  Rather, *Cox v. Fletcher Allen Health Care*, No. 05-cv-180, 2005 WL 2457632 (D. Vt. Oct. 5, 2005) and *Flood v. ClearOne Comms., Inc.*, 618 F.3d 1110 (10th Cir. 2010), both interpret advancement provisions that require a determination "that the facts then known to those making the determination do not preclude indemnification."  *Cox*, 2005 WL 2457632, at *4; *Flood*, 618 F.3d at 1113 (quoting advancement provision with same language).  Relying on this express right conferred upon the indemnitor, in those cases the courts uphold a denial of advancement as authorized by the governing contract.  *Cox*, 2005 WL 2457632, at *8; *Flood*, 618 F.3d at 1113.

These cases are inapposite for numerous reasons.  Initially, no analogous "facts then known" language exists in Paragraph F of the Articles of Incorporation.  In the contracts at issue in both *Cox* and *Flood*, the "facts then known" condition was enumerated as a distinct, third requirement for advancement within the advancement provision itself, following the requirements of (1) a written affirmation of good faith; and (2) a written undertaking.  *Cox*, 2005 WL 2457632, at *8; *Flood*, 618 F.3d at 1113.  The Bank could have, but did not, include such a condition in its advancement provision when drafting the Articles of Incorporation.  The fact that the Articles of Incorporation do not

have the "fact then known" provision relied on by the courts in *Cox* and *Flood* weighs strongly against the Bank's interpretation of the Articles of Incorporation, rather than support it.

Indeed, the 1980 Model Business Corporations Act – from which the Oregon Legislature borrowed heavily in drafting the Oregon Business Corporation Act and Banking Act – contains the very language omitted from the Bank's Articles of Incorporation.  *See* Committee on Corporate Laws, *Changes in the Model Business Corporation Act Affecting Indemnification of Corporate Personnel*, 36 Bus. L. 99, 105 (1980); Andrew J. Morrow, Jr., *Appendix: Task Force Report, Oregon Revised Model Business Corporation Act*, 30 Willamette L. Rev. 407, 464 (1994) ("OBA Task Force Report").[3]  Because the Bank, like the Oregon legislature, chose not to include in its advancement provision a precondition of a determination that "facts then known" do not "preclude indemnification," there is no basis in the Articles of Incorporation for imposing this precondition.

In fact, the phrasing of the advancement provisions in the cases cited by the Bank highlight the very distinction between advancement and indemnification that the Bank seeks to obscure.  The Bank argues that advancement requires a determination that an officer or director is indemnified under the Articles of Incorporation.  However, the advancement provisions in the cases cited by the Bank reflect an understanding that such

---

[3] Notably, the Oregon Legislature declined to include the "facts then known" requirement in the Oregon Business Corporation Act and Banking Act.  OBA Task Force Report, at 464 (explaining that the Legislature, in drafting the Oregon Business Corporation Act, removed the "facts then known" language from the model act to "eliminate the requirement of a determination of whether the applicable standard of conduct for indemnification was met prior to making advances to directors for expenses incurred in defending actions against them").

a determination is impossible.   That is why, instead of describing the necessary determination prior to advancement as a determination that an officer "qualifies for indemnification," these provisions require a determination "that the *facts then known* to those making the determination *do not preclude* indemnification."   This more convoluted phrase is used because the drafters of these advancement provisions recognized that (a) facts not yet known could change the analysis of whether an individual is indemnified and (b) it was not possible to determine, even based on "facts then known," that an officer/director will be indemnified, because some facts, such as the outcome of the trial, that can be dispositive of indemnification by themselves cannot be known *at all* prior to trial.

These cases therefore further demonstrate that Paragraph F's use of "person[s] indemnified hereunder" can only be understood to refer to those persons eligible for indemnification under the Articles of Incorporation, specifically:

> any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (including all appeals), by reason of or arising from the fact that the person is or was a director or officer of the Corporation or one of its subsidiaries . . . .

(*Id.* Ex. 1 at Art. VII(A).)

By allowing for advancement of expenses while the right to indemnification is determined, this interpretation not only reconciles and gives meaning to all of the provisions of the Articles of Incorporation, but is consistent with the purpose of advancement: to address the need for "immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved

PAGE 11 – PLAINTIFF'S RESPONSIVE TRIAL BRIEF

with investigations and legal proceedings." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005) (citation omitted).

Cases interpreting similar language such as "indemnitee" or "indemnified person" have reached the same conclusion. *See*, *e.g.*, *Douglas v. Tractmanager, Inc.*, C.A. No. 9073-ML, 2014 Del. Ch. LEXIS 94, at *20-21 (Del. Ch. May 30, 2014) (in advancement provision, "indemnitee" means "each person who was or is made a party to . . . any actual or threatened action, suit or proceeding . . . by reason of the fact that he or she is or was a director or officer of the Corporation . . .) (citation omitted); *Imbert v. LCM Interest Holding LLC*, C.A. No. 7845-ML, 2013 Del. Ch. LEXIS 126, at *9, *15 (Del. Ch. Feb. 7, 2013) (holding that a provision providing for advancement to an "Indemnified Person" was a mandatory advancement provision applying to all persons eligible for indemnification under the terms of the contract); *Stockman v. Heartland Indus. Partners, L.P.*, C.A. Nos. 4227-VCS, 4427-VCS, 2009 Del. Ch. LEXIS 131, at *10, *29 (Del. Ch. July 14, 2009) (holding that a provision providing for advancement to an "Indemnitee in defense or settlement of any claim that may be subject to a right of indemnification hereunder" was a mandatory advancement provision applying to all persons eligible for indemnification under the terms of the contract).

>    2.    The Bank Cannot Refuse To Accept Mr. Heine's Undertaking To Repay

Mr. Heine's entitlement to advancement also is in no way conditioned upon either (a) the Bank's "acceptance" of Mr. Heine's undertaking to repay, or (b) Mr. Heine's demonstration of an ability to repay. With respect to repayment, Paragraph VII(F) unambiguously requires *only* that Mr. Heine provide an undertaking to repay all expenses

advanced by the Bank "if it shall ultimately be determined that [he] is not entitled to be indemnified by the [Bank]." (Stip. Ex. 1 at Art. VII(F).)  It is undisputed that Mr. Heine satisfied this requirement.  (*Id.* Ex. 1.)

To support its contrary position, the Bank relies on Paragraph VII(F)'s statement that an undertaking to repay "may be accepted [by the Board] without reference to financial ability to make repayment."  The Bank argues that this language authorizes it to *refuse* to advance expenses for any officer or director who lacks the financial ability to make repayment.  (Defendant's Br. at 24.)  However, not only is this authority clearly beyond the language in this provision, but this interpretation violates basic principles of contract construction, as it is in conflict with the Bank's *mandatory* obligation to advance expenses incurred by a "person indemnified hereunder," which "***shall*** . . . be paid by the [Bank]." (Stip. Ex. 1 at Art. VII(F).)  The Bank's interpretation, which would permit it to deny advancement based on an inability to repay, cannot be reconciled with the immediately preceding requirement that the Bank "shall" advance costs to all "person[s] indemnified hereunder," upon receipt of the required undertaking and affirmation.

The cases cited by the Bank concern provisions that do not provide for mandatory advancement, and thus do not present the same conflict within the advancement provision. *See Advanced Mining Systems, Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992) (making no mention of an advancement provision in the corporation's bylaws and, instead, addressing whether a mandate to "indemnify" includes an implicit obligation to advance expenses); *Baldwin v. Bader*, No. 08-431-P-H, 2010 U.S. Dist. LEXIS 136689, at *18 (D. Me. Mar. 7, 2010) ("A corporation can choose to mandate advancement of defense costs

to directors and officers or, as in the case of [the corporation in question in that case] to make case-by-case advancement decisions . . . .  If the corporation mandates the advancement of defenses [sic] costs, that is the end of the matter: directors and officers are entitled to such advancements.") (citations omitted).

When interpreted in accordance with Oregon's principles of contract interpretation, the contractual language identified by the Bank *reinforces* the mandatory nature of the Bank's obligation to advance.  By stating that the undertaking to repay serves as "a general personal obligation of the party receiving the advances but need not be secured," and "may be accepted [by the Board] without reference to financial ability to make repayment," Paragraph VII(F) clarifies that the Bank's duty to advance exists independent of, and notwithstanding, any perceived ability or inability on the part of the officer or director to repay in the event it is ultimately determined that he is not entitled to indemnification.  (*Id.* Ex. 1 at Art. VII(F).)

Indeed, the original drafters of the Model Business Corporation Act (from which this language was derived) explained that this language is intended to accomplish the precise opposite of what the Bank posits.  In published comments, the Committee on Corporate Laws of the Section of Business Law of the American Bar Association, which publishes the Model Business Corporation Act, explained that this language was intended to:

> *[M]ake[] it clear* that the undertaking need not be secured and ***that financial ability to repay is not a prerequisite***, on the ground that it is not fair to favor wealthy directors who may be in less need of financial assistance in mounting their defense over directors whose financial resources are modest.

*See* Committee on Corporate Laws, *Changes in the Model Business Corporation Act Affecting Indemnification of Corporate Personnel*, 36 Bus. L. at 115.

Courts to examine this same language have reached the same conclusion. In *In re Aguilar*, 344 S.W.3d 41, 51 (Texas App. 2011), when analyzing contractual language virtually identical to Paragraph VII(F), the court held that "[t]he structure of the first sentence (providing that the director 'shall be paid . . . after the Corporation receives a . . . written undertaking') indicates that [the corporation] has a mandatory duty to advance defense costs after it *receives* the written undertaking. Although the last sentence provides that the undertaking 'may be accepted,' it does not condition [the corporation's] duty to pay on whether [the corporation] *accepts* the undertaking." *Id.* at 51 (emphases in original).

Accordingly, the Articles of Incorporation do not condition the Bank's duty to advance on whether Mr. Heine will have the ability to repay any advanced expenses in the event it is ultimately determined that he is not entitled to indemnification or on whether the Bank has decided to "accept" the undertaking. (Stip. Ex. 1 at Art. VII(F).)

**B.    The Bank's Set-Off Defense Should Be Rejected**

As the Bank concedes, the common law right of set-off is permissive and lies within the sound discretion of the court. In exercising such discretion, courts look to a number of factors, including the posture and nature of the underlying action. *E.g.*, *Miller v. U.S. Foodservice, Inc.*, 405 F. Supp. 2d 607, 620 (D. Md. 2005) (in an advancement proceeding cited by the Bank in its Trial Brief, staying setoff counterclaim because "if

advance indemnification is to have any utility or meaning, a claimant's entitlement to it must be decided relatively promptly") (citation & quotation omitted).  Contrary to the Bank's assertion, this advancement case – which, like all advancement proceedings, by its nature must provide expedited relief to Mr. Heine – is an inappropriate forum for litigating claims for set-off or recoupment.  *See, e.g.*, *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 510 (Del. 2005) ("[A]n advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment."); *Westar Energy, Inc. v. Wittig*, 235 P.3d 515, 525-26 (Kan. Ct. App. 2010) (in an advancement case, set-off must await a determination on entitlement to indemnification, because to permit an off-set undermines the objective of relieving an accused wrongdoer of the obligation to fund his own defense against corporate charges); *Sun-Times Media Group, Inc. v. Black*, 954 A.2d 380 (2008) (same).

The Bank attempts to distinguish *Westar* and *Sun-Times* on the basis that, whereas in those cases the indemnitor was seeking to recoup already advanced defenses costs, here the Bank seeks to invoke the doctrine of set-off with respect to concededly unrelated debt obligations.   (Defendant's Br. at 30.)   However, the fact that the Bank's counterclaims are unrelated to the advancement claim *strengthens*, rather than undermines, the case for denying set-off.  As explained in *Westar*, the purpose of advancement is "to alleviate an officer from personally providing the enormous resources required to litigate against corporate charges."  235 P.3d at 525.  The court in *Westar* reasoned that "[p]ermitting an offset or recoupment *during this process* undermines that objective of relieving the accused wrongdoer from making the expenditures."  *Id.* at 525-

26 (emphasis in original).  Permitting banks that are obligated to advance legal expenses to use unrelated claims to postpone or avoid paying those expenses would deprive officers and directors of the benefit of advancement by forcing them to personally fund their legal defense until the offset is satisfied.  *See Ficus Invs., v. Private Capital Mgmt., LLC*, 61 A.D.3d 1, 10 (1st Dep't 2009).  Such a result would be inequitable, and in this case would severely undermine Mr. Heine's ability to mount a defense.

Even the cases cited by the Bank squarely militate against permitting an offset here.  In *Miller*, cited by the Bank, the court rejected the very maneuver the Bank attempts here, finding that the employer's counterclaims cannot be used to delay advancement:

> Consistent with the approach advanced by the Delaware courts, ***this court will not allow USF's recoupment and setoff claims to delay the payment of attorney's fees to Miller.*** As the *Lipson* court aptly noted, "a proceeding of this kind must be summary in character, because if advance indemnification is to have any utility or meaning, a claimant's entitlement to it must be decided relatively promptly."  [1996 Del. Ch. LEXIS 108,] 1996 WL 560191 at *2.  ***If a corporation can circumvent its obligation to pay an officer's legal fees simply by filing a counterclaim against the officer, then advance indemnification provisions will be rendered virtually null whenever a corporation wishes to avoid that obligation.*** As with the possible reimbursement of fees, recoupment and setoff can be addressed at the conclusion of the case.

405 F. Supp. 2d at 620 (emphases added) (citing *Lipson v.* Supercuts, Inc., No. 1507-NCC-(JBJ), 1996 Del. Ch. LEXIS 108 (Del. Ch. Sept. 10, 1996)).  Likewise, in *In re Adelphia Comm'ns Corp.*, 323 B.R. 345 (S.D.N.Y. 2005), also cited by the Bank, the court does not award a set-off, instead deferring consideration of that issue.  *Id.* at 396.

Accordingly, the Bank's defense of set-off should be denied.

PAGE 17 – PLAINTIFF'S RESPONSIVE TRIAL BRIEF

C.    **The Terms Of The Engagement Agreement Are Reasonable**

Nor can the Bank avoid its obligation to pay all reasonable legal expenses by establishing that Pryor Cashman's rates are not reasonable.  The Bank argues that Pryor Cashman's rates are unreasonable based primarily on the observation of Ron Hoevet that Mr. Alberts's hourly rate of $640 is higher than the hourly rates of six white collar defense attorneys in the Portland area.    Based upon this observation, Mr. Hoevet concluded that an hourly rate of $550 is reasonable. While Mr. Hoevet never stated that any rate above $550 per hour would be unreasonable (presumably because he was aware of white collar practitioners like Mr. Ramfjord whose standard rates exceed $550 per hour), the Bank seeks to use Mr. Hoevet's declaration to conclude that any rate above $550 is unreasonable.  This argument fails for a variety of reasons.

Mr. Hoevet's view appears to be that it is unreasonable for a client to retain an attorney whose rate is higher than that of other qualified attorneys.  Accordingly, he accuses Mr. Ramfjord of implying that boutique law firms "are either too small to do this work or too small to do this work efficiently" when Mr. Ramfjord explains why it is reasonable for Mr. Heine to retain a large firm with a significant banking practice. (Hoevet Reply Decl. at 2.)  This is a simple error of logic.  Mr. Ramfjord need not believe that attorneys at boutique law firms are unqualified to conclude that it was reasonable for Mr. Heine to retain a large firm.  It is entirely possible to believe that a boutique law firm is qualified and still reasonably decide to retain attorneys at a larger, more expensive law firm based on the resources and specific background and skills of attorneys at the larger firm.

PAGE 18 – PLAINTIFF'S RESPONSIVE TRIAL BRIEF

This points to a larger problem with the analysis advanced by Mr. Hoevet and the Bank, which is that they seek to evaluate "reasonableness" while entirely ignoring how reasonable clients actually select their attorneys.  Reasonable clients regularly retain attorneys whose hourly rates are higher than rates of other qualified attorneys.  Attorneys are not fungible commodities.  There are dozens of potential reasons to reasonably decide to retain an attorney with a higher hourly rate, ranging from financial considerations based on efficiency to considerations of the attorney's education, employment history, professional awards, personal references, demeanor, staffing support and technological support.

As Mr. Ramfjord explained in his declaration, many aspects of the criminal case against Mr. Heine make it reasonable for Mr. Heine to seek out attorneys who have specific characteristics, such as a significant background in the banking industry, white collar criminal experience and the technical resources to review, analyze and synthesize large volumes of electronic data.  Pryor Cashman LLP and its lead counsel, Mr. Alberts, are well-suited to these demands, and it was certainly reasonable for Mr. Heine to choose them to represent him in the Criminal Action.

Moreover, whether the hourly rates are reasonable is necessarily a fact-specific inquiry, which requires consideration of more than simply the prevailing rate within the specific market in which an individual litigation is based.  In many circumstances, reasonable clients look outside their local market for counsel.  The specific combination of expertise and experience in banking and white collar defense possessed by Pryor Cashman's attorneys, which are certainly related to its location in the financial capital of

the United States, merit an adjustment from the prevailing rates in Portland. *Potter v. Cavaletto*, No. 3:10-cv-00124ST(AJB), 2011 U.S. Dist. LEXIS 125118, at *12 (D. Or. Oct. 28 2011).  An incremental adjustment to $640 per hour from the rate of $550 is reasonable in light of Pryor Cashman's relevant expertise and experience.

It also should be noted that the Bank's claim that its D&O insurance carrier "reached the same conclusion" as the Bank's expert is simply false.  The Bank cites to a coverage and reservation of rights letter sent by the Bank's insurer which states (in boilerplate language that is present in virtually every insurance coverage letter) that the insurer's consent to Mr. Heine's engagement of Pryor Cashman LLP is "conditioned on . . . reaching agreement on acceptable staffing and billing rates."  (Trial Exhibit 211.) This does not in any way imply that the insurer agrees with the Bank that $640 is an unreasonable rate.  It merely states that no agreement has yet been reached, which is the boilerplate language in any reservation of rights agreement.  Moreover, even if the insurer were to agree with the Bank, that would be irrelevant.  The insurer has the same incentive as the Bank to try to pay the lowest rate possible.[4]

The retainer payments required under the Engagement Agreement also are reasonable.  As Mr. Ramfjord observed in his report, he has requested large retainers and views a trial retainer of $350,000 as reasonable for a variety of reasons, including the probable fees associated with going to trial in this case.  (Ramfjord Rep. at 5.)  Further,

---

[4] For this reason, it is troubling that Mr. Hoevet relied so heavily on this insurer's letter in his sworn statement.  Mr. Hoevet stated as a basis for his opinion that he "read John Cullen's August 26, 2015 letter to Jeffrey Alberts in response and paid extra attention to page 6, paragraph F."  (Hoevet Decl. at 3.)  Assuming that Mr. Hoevet is not merely commenting on his reading preferences, he appears to be implying that paragraph F somehow supports the conclusions that he reached.  Mr. Hoevet should have known that an insurer is not as an objective source of information on the reasonableness of fees the insurer will pay.  Including this as a basis for his opinion undermines the credibility of his opinion.

the mitigating factors articulated by the Bank – that it is a going concern backed by D&O insurance – do not render the retainer unreasonable.  Many going concerns, including banks, become unable to pay, or unwilling to pay without being compelled, even if they are willing when the case begins.  Similarly, the Bank may also seek to delay making advancement payments leading up to the trial as part of a tactic to avoid making these payments if Mr. Heine is convicted.  Given that trial in Criminal Action likely would result in legal fees well in excess of $350,000, this retainer payment is appropriate.[5]

---

[5] Pursuant to the Stipulation, the parties agreed that Plaintiff's Second Claim for Relief seeking attorneys' fees incurred in connection with this action will be made by motion after entry of judgment, pursuant to Fed. R. Civ. P. 54(d).  However, since the Bank addressed Mr. Heine's Second Claim in its Trial Brief, claiming that it is barred by the American Rule, we note that, notwithstanding the American Rule's general bar to the recovery of attorneys' fees, the Ninth Circuit permits a court to "assess attorneys fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Religious Tech. Ctr. v. Scott*, Nos. 94-55781 & 94-55920 (JTN), 1996 U.S. App. LEXIS 8954, at *6 n.6 (9th Cir. Apr. 11, 1996).  Consistent with applicable law, by forcing Mr. Heine to bring this action despite the plain language of the Articles of Incorporation, the Bank's conduct warrants an award of Mr. Heine's fees on fees.  *See, e.g.*, *Douglas v. Tractmanager, Inc.*, C.A. No. 9073-ML, 2014 Del. Ch. LEXIS 94, at *40-41 (Del. Ch. May 30, 2014) (awarding the indemnitee fees on fees); *Imbert*, 2013 Del. Ch. LEXIS 126, at *46 (same); *DeLucca v. KKAT Mgmt.*, No. 1384-N, 2006 Del. Ch. LEXIS 19, at *54 (Del. Ch. Jan. 23, 2006) (same).

PAGE 21 – PLAINTIFF'S RESPONSIVE TRIAL BRIEF

## III.  <u>CONCLUSION</u>

For all the foregoing reasons, Mr. Heine should be granted (i) judgment on his First and Third Claims for Relief in the Complaint, filed August 26, 2015; and (ii) such other and further relief as the Court deems just and proper.

Dated:  October 23, 2015

PRYOR CASHMAN LLP

By:  <u>*s/ Jeffrey E. Alberts*</u>
Jeffrey E. Alberts (admitted *pro hac vice)*
Bryan T. Mohler (admitted *pro hac vice*)
7 Times Square
New York, New York 10036-6569
(212) 421-4100

TONKON TORP LLP
Caroline Harris Crowne
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204
Telephone:   (503) 802-2056