IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAN HEINE**, | Case No. 3:15-cv-01622-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **THE BANK OF OSWEGO,**<br>**an Oregon corporation**, | |
| Defendant. | |

Caroline Harris Crowne, TONKON TORP LLP, 1600 Pioneer Tower, 888 S.W. Fifth Avenue, Portland, Or 97204; Jeffrey Alberts and Bryan T. Mohler, PRYOR CASHMAN LLP, 7 Times Square, New York, NY 10036. Of Attorneys for Plaintiff.

G. Kevin Kiely, Casey M. Nokes, and Nicole M. Swift, CABLE HUSTON LLP, 1001 S.W. Fifth Avenue, Suite 2000, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

From 2004 through September 2014, Plaintiff Dan Heine ("Heine") was President, Chief Executive Officer, co-founder, and a member of the Board of Directors of Defendant The Bank of Oswego (the "Bank"). In June 2015, a federal grand jury indicted both Heine and Diana Yates ("Yates")[1] for conspiracy to commit bank fraud and making false bank entries, reports, and

---

[1] From 2004 through March 2012, Yates was Executive Vice President, Chief Financial Officer, co-founder, and Secretary of the Bank's Board of Directors.

transactions during the time that Heine and Yates were affiliated with the Bank (the "Criminal Action").[2] The Criminal Action is pending and in its early stages.

Invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332, Heine commenced this civil lawsuit against the Bank in August 2015. In this action, Heine seeks: (1) advancement of reasonable expenses that Heine will be incurring in his defense in the Criminal Action ("First Claim"); (2) reimbursement of Heine's reasonable attorney's fees and expenses incurred in bringing this action ("Second Claim"); and (3) a declaratory judgment stating that the Bank is obligated to advance Heine's expenses, including legal fees, incurred in his defense in the Criminal Action ("Third Claim"). Heine contends that he is entitled to this relief based on the indemnification and advancement provisions in Section VII of the Bank's Articles of Incorporation ("Articles"), as authorized under Oregon Revised Statutes ("ORS") § 707.752, which is part of the Oregon Banking Act.[3]

Both Heine and the Bank waived their rights to a jury in this civil case, and the Court held a bench trial on November 3, 2015 on Heine's First and Third Claims.[4] The Court conducted the bench trial on essentially stipulated facts. Pursuant to Fed. R. Civ. P. 52(a), this

---

[2] *United States v. Dan Heine and Diana Yates*, Case No. 3:15-cr-00238-SI (D. Or.).

[3] Invoking the Court's ancillary jurisdiction, Yates presents virtually identical arguments in support of her motion, filed in the Criminal Action, to compel the Bank to advance her criminal defense legal fees and expenses. Because there is incomplete diversity between Yates and the Bank, this Court would have lacked supplemental jurisdiction if Yates had sought to intervene in this civil case as a co-plaintiff under Fed. R. Civ. P. 24. *See* 28 U.S.C. § 1367(b). The Court has not yet ruled on whether it has ancillary jurisdiction to hear Yates's motion filed in the Criminal Action.

[4] The Court will address Heine's Second Claim separately, pursuant to Fed. R. Civ. P. 42(b).

Opinion and Order sets forth the Court's Findings of Fact and Conclusions of Law on Heine's First and Third Claims.[5]

## FINDINGS OF FACT[6]

Based on the record in this case and the exhibits received into evidence at the bench trial held on November 3, 2015, the Court finds the following facts by a preponderance of the evidence:

### A.  The Parties

The Bank is an Oregon corporation with its principal place of business in Lake Oswego, Oregon. Ex. 1, p. 1. Heine was one of the Bank's founders, its President, its Chief Executive Officer, and a member of the Bank's Board of Directors (the "Board") beginning in September 2004 and ending in September 2014. Ex. 2, p. 1. Yates was also one of the Bank's founders, its Executive Vice President, its Chief Financial Officer, and the Board's Secretary from 2004 to approximately March 2012. Ex. 2, p. 2.

On June 24, 2015, a federal grand jury in Portland, Oregon issued a twenty-seven count indictment against both Heine and Yates. *See United States v. Dan Heine and Diana Yates*, Case

---

[5] The Bank also asserted four counterclaims against Heine for unpaid debts owed to the Bank. Heine has agreed that the Court may enter judgment in favor of the Bank on all four counterclaims in the total amount of $141,645.39, provided that any such judgment will be entered no earlier than the Court enters judgment on Heine's First and Third Claims. The parties further stipulated that Heine's agreement to allow judgment against him on the Bank's counterclaims does not waive any party's right to continue to litigate the question of whether the counterclaim judgment amount in favor of the Bank should be allowed as a setoff against any recovery that may be granted in favor Heine on his First or Second Claims.

[6] Docket entries in this civil action are referred to as "Dkt." Exhibits received in evidence at trial are referred to as "Ex." followed by the specific page number of that exhibit. The Court received Heine's exhibits one through six into evidence. The Court received the Bank's exhibits 201-211 and 213-214. The parties disputed the relevance of some exhibits. When the Court cites to an exhibit, the Court finds the facts discussed by the Court to be true and relevant. Neither party called any witness to testify at trial.

No. 3:15-cr-00238-SI. Ex. 2, p. 1. The indictment charges both Heine and Yates with one count

of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; and twenty-six counts of

making false bank entries, reports, and transactions, in violation of 18 U.S.C. § 1005. Ex. 2,

pp. 1, 12. Heine and the Bank agree that Heine is a defendant in the Criminal Action by reason of

and arising from the fact that he was a director and officer of the Bank. Ex. 6, p. 7.

On July 3, 2015, Heine signed an engagement agreement with Pryor Cashman LLP, a

New York law firm, to represent Heine in the Criminal Action. Ex. 3, p. 5. Heine's lead counsel

at Pryor Cashman is Jeffrey Alberts ("Alberts"), the head of Pryor Cashman's White Collar

Defense and Investigations Practice. Ex. 209, p. 1. Alberts is also a member of Pryor Cashman's

Financial Institutions Group, which focuses on representing financial institutions and individuals

in the community banking industry. Ex. 6, p. 7. The engagement agreement requires Heine to

pay Pryor Cashman a retainer of $400,000 to be applied toward future legal fees and expenses.

Ex. 3, p. 3. Alberts's hourly billing rate is $640, and the engagement agreement states that the

rates to be charged by other attorneys at Pryor Cashman will range from $310 to $950 per hour.

Ex. 3, p. 2.

**B.  Heine's Request for the Advancement of Legal Expenses**

Section VII of the Bank's Articles of Incorporation, which were in full force and effect at

all times relevant to this action, contain the following provision regarding indemnification:

> A. <u>Right to Indemnification</u>. Subject to the provisions of Sections
> B, D and E below, the Corporation **shall indemnify** any person
> who was or is a party or is threatened to be made a party to any
> threatened, pending or completed action, suit or proceeding,
> whether civil, criminal, administrative, or investigative (including
> all appeals), by reason of or arising from the fact that the person is
> or was a director or officer of the Corporation . . . **against
> reasonable expenses** . . . actually and reasonably incurred by the
> person to be indemnified in connection with such action, suit or
> proceeding **if the conduct of the person was in good faith, the
> person reasonably believed that such person's conduct was in**

> **the best interests of the Corporation, and, with respect to any criminal proceeding, the person had no reasonable cause to believe such person's conduct was unlawful** . . . .

Ex. 1, p. 4 (emphasis added). Under this indemnification provision, the Bank may and shall indemnify a director or officer against reasonable expenses if: (1) the conduct of the director or officer was in good faith; (2) the director or officer reasonably believed that his conduct was in the Bank's best interest; and (3) the director or officer had no reasonable cause to believe that his conduct was unlawful.

Indemnification under Section VII.A is subject to the provisions of Sections VII.B, VII.D, and VII.E. Section VII.B provides that the Bank may not indemnify a director or officer unless it is expressly determines that he or she has met the standard of conduct set forth in Section VII.A. Ex. 1, p. 4. Section VII.D provides for mandatory indemnification of a director or officer who is successful on the merits or in defense of any action. Ex. 1, p. 5. Section VII.E requires that a director or officer who seeks the benefits of indemnification must "promptly notify the Corporation that the person has been named a defendant to an action, suit or proceeding . . . and intends to rely upon the right of indemnification . . . ." Ex. 1, p. 5.

The Bank's Articles of Incorporation also provide for the advancement of expenses. Section VII.F reads as follows:

> F. <u>Advances for Expenses</u>. Expenses incurred by a person indemnified hereunder . . . shall, to the extent not prohibited by applicable law or regulation, be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such person to repay such expenses if it shall ultimately be determined that the person is not entitled to be indemnified by the Corporation and a written affirmation of the person's good faith belief that he or she has met the applicable standard of conduct. The undertaking must be a general personal obligation of the party receiving the advances but need not be secured and may be accepted without reference to financial ability to make repayment.

PAGE 5 – OPINION AND ORDER

Ex. 1, p. 6. Thus, a person seeking advancement for expenses must satisfy, at a minimum, three requirements. He must: (1) timely notify the Bank that he or she has been named a defendant and intends to rely upon the right of indemnification, under Section VII.E; (2) provide the Bank with an undertaking that he or she will repay advanced expenses if it is ultimately determined that he is not entitled to indemnification, under Section VII.F; and (3) provide the Bank with a written affirmation of his or her good faith belief that he or she has met the standard of conduct set forth in Section VII.A, under Section VII.F.

On July 7, 2015, Heine sent a letter through Alberts to Stephen Andrews ("Andrews"), the Bank's President and Chief Executive Officer. Ex. 4, p. 4. In the letter, Heine notified Andrews that Heine had become a party to the Criminal Action by reason of and arising out of the fact that he was a former director and officer of the Bank. Ex. 4, p. 4. Heine requested that the Bank advance all reasonable expenses that Heine incurs in defending the Criminal Action. Heine also provided the Bank with an undertaking to repay the advanced expenses in the event it is ultimately determined that he is not entitled to indemnification. Ex. 4, p. 4. Additionally, Heine affirmed his good faith belief that: (1) his conduct was in good faith; (2) he reasonably believed that his conduct was in the best interests of the Bank; and (3) he had no reasonable cause to believe that his conduct was unlawful. Ex. 4, p. 4.

On July 21, 2015, the Board passed a resolution stating, in part, that the Bank is not permitted to indemnify Heine under the Articles of Incorporation because "the Board cannot conclude that Mr. Heine acted in good faith and in a manner he believed to be in the best interest of the Bank." Ex. 5. In passing this resolution, the Board considered the Criminal Action, including the allegations contained in the indictment and the records underlying the transactions

described in the indictment. Ex. 5. The Board made its determination regarding Heine's conduct

under Section VII.B. of the Articles of Incorporation. Ex. 5.

Section VII.B reads, in relevant part:

> B. <u>Determination of Right to Indemnification in Certain Cases</u>.
> Subject to the provisions of Section D and E below,
> indemnification under Section A of this Article **shall not be made**
> by the Corporation **unless it is expressly determined that**
> **indemnification of the person** who is or was an officer or
> director, or is or was, serving at the request of the Corporation as a
> director, officer, partner, or trustee of another foreign or domestic
> corporation, partnership, joint venture, trust, employee benefit plan
> or other enterpr[i]se, **is proper in the circumstances because the**
> **person has met the applicable standard of conduct set forth in**
> **Section A**. That determination may be made by any of the
> following:
>
> (a) **By the Board of Directors by a majority vote** of a quorum
> consisting of directors who are not or were not parties to the
> action, suit or proceeding . . . .

Ex. 1, p. 4 (emphasis added). The Board also determined that, as an alternative and independent

reason for denying advancement of Heine's fees and expenses, Heine's undertaking to repay

could not be accepted because Heine previously told the Bank that he could not repay his

existing debt that he owes to the Bank. Dkt. 66-1 at 3-4.[7]

The Bank has not withdrawn its decision to deny Heine's request for advancement of

legal fees and expenses, and the Bank continues to maintain that it is not obligated to advance

these fees and expenses. Ex. 6, p. 9. Heine and the Bank agree that if it is ultimately determined

that Heine is not entitled to indemnification, it is more likely than not that Heine will be unable

to repay any advanced legal fees and expenses. Ex. 6, p. 8.

---

[7] Heine does not allege that the Bank acted in less than good faith in passing the July 21,
2015 resolution, nor did Heine submit any evidence that the Bank acted in less than good faith.
Thus, the Court concludes as a Finding of Fact that the Bank, at all relevant times, acted in good
faith.

**C.  Heine's Debts to the Bank**

The Bank brings four counterclaims against Heine for unpaid debts that Heine owes to the Bank. The total amount sought in all four counterclaims is $141,645.39. The counterclaims result from a loan agreement between Heine and the Bank and Heine's credit card account with Elan Financial Services ("Elan").

**1.  The Loan Agreement**

On June 15, 2011, Heine, as the borrower, and the Bank, as the lender, entered into a loan agreement. Ex. 201, p. 21. The principal amount Heine borrowed from the Bank is $100,000. Ex. 201, p. 15; Ex. 202. The maturity date of the loan was June 15, 2015, when the "entire unpaid principal balance, all accrued and unpaid interest, and all other amounts payable thereunder [was] due and payable." Ex. 6, p. 4. In the loan agreement, Heine agreed that he would be in default under the loan if he failed to make any payment when due. Ex. 6, p. 5. Heine also agreed that, upon default, the Bank "may declare the entire unpaid principal balance under [the loan] and all accrued unpaid interest immediately due." Ex. 6, p. 5. Heine has yet to make any payments due on the loan. As of September 15, 2015, Heine owes the Bank $113,157.17 under the loan agreement, including principal, late fees, and interest. Ex. 202.

**2.  The Elan Credit Card Account**

On March 1, 2005, Heine sought a credit card from Elan. Ex. 6, p. 5. Elan determined that Heine was not eligible to receive the credit card under Elan's credit standards. Ex. 6, p. 5. After an employee of the Bank signed a full recourse agreement, Elan then issued a credit card to Heine, and the Bank agreed to purchase the account from Elan upon demand. Ex. 203.

On January 20, 2015, Heine sent a letter to Andrews stating that:

> I am not able to continue making $720 monthly payments on my
> PLOC. I have not located employment and have little income. I
> have used reserves for several months and can no longer. . . . When

and if my circumstances change, I will do my best to fulfill my
obligation to the bank.

Ex. 208. On January 23, 2015, Heine's credit card account with Elan had a balance of

$28,488.22 and was 120 days delinquent. Ex. 204. On February 12, 2015, the Bank sent Heine a

notice of default, demanding that Heine cure the default on both the loan and the credit card.

Ex. 205. The next day, Elan charged the Bank for the entire $28,488.22 due on the credit card.

Ex. 206. Elan has assigned its rights, title, and interest in the credit card to the Bank. Ex. 207.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact and the legal standards that follow, the Court

makes the following Conclusions of Law under Fed. R. Civ. P. 52(a)(1):

## A.  General Principles Regarding Indemnification and Advancement Obligations

Indemnification and advancement obligations by an institution can arise when an

individual is a party to a civil or criminal proceeding arising from the fact that the individual is or

was a director or officer of that institution and the institution assumed or has such an obligation

either by contract or by statute. Indemnification generally refers to the right of a director or

officer to be reimbursed for expenses incurred by him or her in such a proceeding. In many

jurisdictions, the right to indemnification cannot be established until after the legal proceeding at

issue has concluded. *See generally* Richard A. Rossman, Matthew J. Lund, and Kathy K.

Lochmann, *A Primer of Advancement of Defense Costs: The Rights and Duties of Officers and*

*Corporations*, 85 U. Det. Mercy L. Rev. 29, 31 (2007).

Advancement generally refers to the right of a director or officer to receive an advance

for expenses that he or she incurs in the legal proceeding before its final disposition. A director

or officer's entitlement to an advancement of expenses is related to his or her entitlement to

indemnification; however, the eligibility requirements for each are distinct. *Id.* at 53; *see also*

*Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *10 (Del. Ch. Dec. 23, 2014) (stating that the Delaware Supreme Court has held that indemnification and advancement are "separate and distinct legal actions") (quoting *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005)). Thus, an individual ultimately determined to be ineligible for indemnification may still be entitled to advancement before that ultimate determination. Rossman, 85 U. Det. Mercy L. Rev. at 53; *see also Homestore*, 888 A.2d at 211 (stating that a director's right to indemnification "cannot be established . . . until after the defense to the legal proceedings has [concluded.]").

There is a strong public policy in support of advancing fees to directors and officers. Rossman, 85 U. Det. Mercy L. Rev. at 33. Advancement is in the best interest of the corporation because the corporation may benefit from its director or officer's enhanced ability to defend against claims. *Id.*; *see also Homestore*, 888 A.2d at 218 ("Although advancement provides an individual benefit to corporate officials, it is actually a desirable underwriting of risk by the corporation in anticipation of greater corporate-wide rewards for its shareholders.") (footnote omitted) (quotation marks omitted). Advancement provisions also serve to help the corporation recruit capable individuals as directors and officers. Stephen A. Radin, *"Sinners Who Find Religion": Advancement of Litigation Expenses to Corporate Officials Accused of Wrongdoing*, 25 Rev. Litig. 251, 252 (2006).

Generally, it is not necessary for an officer or director or former officer or director to prove that his or her conduct met an applicable standard before obtaining advancement of legal fees and expenses. Rossman, 85 U. Det. Mercy L. Rev. at 33. Requiring a determination of whether the director or officer is entitled to indemnification before the advancement of legal fees "is impractical, imposing burdens of investigation and procedural requirements which could make advances for expenses effectively unavailable." Andrew J. Morrow, Jr., *Appendix: Task*

*Force Report, Oregon Revised Model Business Corporation Act*, 30 Willamette L. Rev. 407, 464
(1994). Thus, under Oregon banking law, ORS § 707.752(1) permits banking institutions to
advance a director's reasonable expenses if two procedural conditions are met: (1) the director
provides the banking institution with a written affirmation of the director's good faith belief that
he or she has met the applicable standard of conduct; and (2) the director provides the banking
institution with a written undertaking to repay the advancement if it is ultimately determined that
the director did not meet the required standard of conduct. ORS § 707.752(1), however, is
permissive, rather than mandatory. It establishes only the ability or authority of a banking
institution to grant advancement. *See* Rossman, 85 U. Det. Mercy L. Rev. at 34 (stating that
"permissive" advancement statutes establish only the *ability* of a corporation to grant
advancement, whereas "mandatory" advancement statutes *require* the corporation to advance
expenses under certain circumstances).

A corporation, or banking institution, has a great deal of discretion to provide limitations
to advancement and indemnification, provided those limitations are stated unambiguously. *See*
ORS § 707.764(2) ("If articles of incorporation limit indemnification or advance of expenses,
any indemnification and advance of expenses are valid only to the extent consistent with the
articles of incorporation."); Rossman, 85 U. Det. Mercy L. Rev. at 32-33 ("[O]rganizational
documents are a primary basis of the corporation's contractual obligations relating to
advancement and indemnification."). If done ambiguously, however, the corporation or banking
institution's articles, bylaws, or other relevant documents may be construed against the
corporation or banking institution and in favor of the director or officer seeking advancement and
indemnification. *See* ORS § 42.260 ("When different constructions of a provision are otherwise

equally proper, that construction is to be taken which is most favorable to the party in whose favor the provision was made.")

In this case, the Court first considers whether Heine is entitled to the advancement of expenses he incurs in defending himself in the Criminal Action. Second, the Court determines whether Pryor Cashman's hourly fees and retainer demand are "reasonable expenses" under Section VII.A and ORS 707.752. Third, the Court addresses the Bank's argument that it is entitled to "setoff" Heine's existing debts to the Bank, as established in the Bank's four counterclaims, against any advancement of Heine's expenses. Finally, the Court considers the Bank's argument that Heine is "equitably estopped" from making his undertaking to repay the advancement in the event it is ultimately determined that he is not entitled to indemnification, which would preclude Heine from being entitled to any advancement.

**B.  Whether Heine is Entitled to Advancement of Expenses under Section VII.F**

Among other things, the Bank's Articles of Incorporation create contractual rights and obligations, including third-party beneficiary rights and obligations, between the Bank and its officers and directors. *See generally Dentel v. Fidelity Sav. & Loan Ass'n*, 273 Or. 31, 33 (1975) ("The bylaws of the corporation have been termed a contract between the members of the corporation, and between the corporation and its members. . . . The articles of incorporation constitute 'a contract between the corporation and the state, and between the corporation and its owners, and between the owners themselves.'") (quotation omitted). Relying upon the Articles, Heine asserts a contractual right to receive an advancement of his expenses. The Bank maintains that, under the facts presented and the terms of the Articles, it has no such contractual obligation to Heine. At the center of the parties' disagreement, Heine and the Bank dispute the meaning of the phrase "person indemnified hereunder," as that phrase is used in Section VII.F, the advancement provision. *See* Ex. 1, p. 6 ("Expenses incurred by a person indemnified hereunder

PAGE 12 – OPINION AND ORDER

in defending a . . . [criminal] proceeding (including all appeals) or threat thereof, shall, to the extent not prohibited by applicable law or regulation, be paid by the Corporation in advance of the final disposition . . . .").

Heine argues that the phrase refers back to Section VII.A's description of:

> [A]ny person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (including all appeals), by reason of or arising from the fact that the person is or was a director or officer of the Corporation or one of its subsidiaries, or is or was serving at the request of the Corporation as a director, officer, partner, or trustee of another foreign or domestic Corporation, partnership, joint venture, trust, employee benefit plan or other enterprise . . . .

Ex. 1, p. 4. In essence, Heine maintains that, in the context of this case, the phrase a "person indemnified hereunder" means "a person who is a party to a criminal proceeding by reason of or arising from the fact that the person was a director or officer" of the Bank. Thus, according to Heine, he is a "person indemnified hereunder" and thus entitled to advancement of his reasonable expenses.

The Bank, however, argues that a "person indemnified hereunder" means that a determination already has been made under Section VII.B that the person is entitled to indemnification under Section VII.A and that such a determination must be made before the Bank may, or must, advance expenses. The Bank also argues that under Section VII.F, it has the discretion to evaluate an applicant's financial ability to repay any advancement when determining whether advancement is proper. *See* Ex. 1, p. 6 ("The undertaking must be a general personal obligation of the party receiving the advances but need not be secured and may be accepted without reference to financial ability to make repayment.").

Because the resolution of the parties' dispute turns upon the interpretation of a phrase in the parties' "contract," ordinary principles of contract interpretation apply. Contract

interpretation is a matter of substantive law to which state law applies in this diversity case. *See Getlin v. Maryland Cas. Co.*, 196 F.2d 249 (9th Cir. 1952) ("This case is in federal court by diversity of citizenship only. The law of the state in which the court sits must apply."); *Snook v. St. Paul Fire & Marine Ins. Co.*, 220 F. Supp. 314, 316-17 ("This being a diversity case, jurisdiction is grounded on that fact and the policy must be interpreted and construed in accordance with the Laws of Oregon, the place where the contract was made."). The Bank adopted the Articles of Incorporation pursuant to the Oregon Bank Act. Ex. 1, p. 1. Thus, the Court interprets the "contract" in accordance with Oregon law.

In *Yogman v. Parrott*, the Oregon Supreme Court established a three-step process for interpreting a disputed contractual provision. 325 Or. 358 (1997). First, the court must determine whether, as a matter of law, the relevant provision is ambiguous. *Id.* at 361. A contractual provision is ambiguous if it can "reasonably be given more than one plausible interpretation." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011). "The court must, if possible, construe the contract so as to give effect to all of its provisions." *Id.* Further, when construing a contract provision, the court is "not to insert what has been omitted, or to omit what has been inserted." ORS § 42.230; *see also Yogman*, 325 Or. at 361 (citing ORS § 42.230 at step one of the analysis).

The analysis ends if the meaning of the provision is clear from the text and context of the contract. *Williams*, 351 Or. at 379-80. The court then applies the contractual term to the facts. *Yogman*, 325 Or. at 361. If the provision is ambiguous, however, the court proceeds to the second step. *Id.* at 363. At the second step, the trier of fact examines extrinsic evidence of the contracting parties' intent and construes the contractual provision consistent with that intent, if such a resolution can be determined. *Id.* Because Oregon follows the objective theory of

contracts, relevant evidence at step two may include actual "manifestations of intent, as evidenced by the parties' communications and acts." *Holdner v. Holdner*, 176 Or. App. 111, 120 (2001) (quotation marks omitted). If, after examining extrinsic evidence, the contract is still ambiguous, the court applies appropriate maxims of construction at the third step. *Yogman*, at 364.

### 1. Whether the Advancement Provision Has More Than One Plausible Interpretation

Applying step one of the *Yogman* analysis, the Court first considers whether the Bank's interpretation of Section VII.F is plausible. The Court then considers whether Heine's interpretation of Section VII.F is plausible.

### a. The Bank's Interpretation

The Bank argues that Section VII.F is contingent rather than mandatory. First, the Bank argues that advancement of legal expenses is conditional upon a determination, made by one of the procedures described in Section VII.B, that the individual met the standard of conduct set forth in Section VII.A. Second, the Bank asserts that it may deny Heine advancement because of Heine's inability to repay any advanced expenses. Each argument is addressed in turn.

### i. A "Person Indemnified Hereunder"

The Bank argues that the determination of whether an applicant for advancement of expenses is a "person indemnified hereunder" requires a review, under Section VII.B, of whether indemnification is "proper in the circumstances because the person met the applicable standard of conduct set forth in Section A." Ex. 1, p. 4. Section VII.B states that "indemnification under Section A of this Article shall not be made by the Corporation unless it is expressly determined that indemnification of the person . . . is proper in the circumstances because the person has met the applicable standard of conduct set forth in Section A." Ex. 1, p. 4. That determination may be

made by the Board "by a majority vote of a quorum consisting of directors who are not or were

not parties to the action, suit or proceeding . . . ." Ex. 1, p. 4.

Section VII.A requires that "the conduct of the person was in good faith, the person

reasonably believed that such person's conduct was in the best interests of the Corporation, and,

with respect to any criminal proceeding, the person had no reasonable cause to believe such

person's conduct was unlawful . . . ." Ex. 1, p. 4. Thus, under the Bank's interpretation, before an

applicant may qualify as a "person indemnified hereunder," the Board must determine, by a

majority vote consisting of directors who are not or were not parties to the action, suit, or

proceeding, that the applicant meets the good faith standard of conduct set forth in

Section VII.A.

The Bank asserts that this case is comparable to other federal court cases upholding a

corporation's denial of the advancement of expenses when that corporation's bylaws establish

that the board of directors must review the applicant's conduct before advancing fees or other

expenses. For example, in *Cox v. Fletcher Allen Health Care*, the Fletcher Allen bylaws

provided that the advancement of expenses was conditioned upon "a determination . . . that the

facts then known to those making the determination do not preclude indemnification."

2005 WL 2457632, at *4 (D. Vt. Oct. 5, 2005). The indemnification provision of the bylaws

reads, in relevant part, as follows:

> The corporation shall not indemnify an Eligible Person under this
> section . . . [if] it shall be finally adjudged in said action, suit or
> proceeding that such person is liable for gross negligence or such
> person has knowingly and willfully acted in a manner contrary to
> the best interests of the corporation[.]

*Id.* The district court held that Fletcher Allen's board of directors could make its own,

independent determination that the plaintiff failed to meet this standard of conduct and reject the

plaintiff's request for indemnification of expenses based upon this determination. *Id.* at 5; *see*

PAGE 16 – OPINION AND ORDER

*also Flood v. ClearOne Comm'ns, Inc.*, 618 F.3d 1110, 1120 (10th Cir. 2010) (considering nearly identical language regarding the requirement of a determination "that the facts then known to those making the determination would not preclude indemnification" and finding that advancement is contingent upon this determination). The Bank here asserts that, as in *Flood* and *Cox*, it has the discretion to deny advancement if the applicant does not meet the standard of conduct set forth in Section VII.A.

The Bank's interpretation of "person indemnified hereunder" does not contradict any other provision of the Articles of Incorporation and is a reasonable reading of this phrase in Section VII.F. Thus, the Court finds that the Bank's interpretation of a "person indemnified hereunder" is plausible.

### ii.   Whether the Bank May Consider Heine's Ability to Repay

The Bank also argues that it properly considered Heine's ability to repay in denying him advancement under Section VII.F. ORS § 707.752 merely permits a Bank to reimburse the reasonable expenses incurred by a director who affirms his good faith belief and furnishes an undertaking to repay; it does not require the Bank to do so. ORS § 707.752 states that "[t]he undertaking . . . must be an unlimited general obligation of the director but need not be secured and may be accepted without reference to financial ability to make repayment." The last sentence of Section VII.F contains the same wording as ORS § 707.752: "The undertaking . . . may be accepted without reference to financial ability to make repayment." Ex. 1, p. 6. The Bank argues that because the advancement provision does not say that the Bank *must* accept an undertaking without reference to financial ability to make repayment but only that the Bank *may* accept the undertaking, the Bank retains the discretion to refuse to accept Heine's undertaking. Given Section VII.F's use of the permissive word "may," rather than the mandatory word "must," the Court also finds that the Bank's interpretation of the last sentence of Section VII.F is plausible.

### b.  Heine's Interpretation

Heine argues that indemnification is retrospective, while advancement is necessarily prospective; therefore, in the advancement section, Heine asserts "person indemnified hereunder" refers only to any person who may later be found to be entitled to indemnification under the Articles of Incorporation. Additionally, Heine argues that the Bank cannot refuse to advance expenses based upon Heine's inability to repay the advancement in the event that it is ultimately determined that he is not entitled to indemnification. The Court addresses each argument in turn.

### i.  A "Person Indemnified Hereunder"

Heine argues that the determination of whether a director or officer has met the applicable standard of conduct required for indemnification can only be made after the legal proceeding at issue has concluded and that this ultimate indemnification determination is irrelevant to the immediate need and obligation to advance defense costs. Section VII.D provides for mandatory indemnification when a director is successful in defense of any action. Section VII.D states that "to the extent a director, officer, employee or agent (including an attorney) is successful on the merits or otherwise in defense of any action . . . that person shall be indemnified against expenses (including attorneys fees) actually and reasonably incurred by him in connection therewith." Ex. 1, p. 5. ORS § 707.748 also provides for mandatory indemnification in such circumstances as follows:

> Unless limited by its articles of incorporation, **a banking institution shall indemnify a director who was wholly successful**, on the merits or otherwise, **in the defense of any proceeding to which the director was a party** because of being a director of the banking institution against reasonable expenses incurred by the director in connection with the proceeding.

(emphasis added). Thus, if Heine successfully defends himself in the Criminal Action, he will be entitled to indemnification under Section VII.D of the Articles of Incorporation and ORS § 707.748, regardless of any decision made by the Bank's Board.

Conversely, both the Articles of Incorporation and Oregon statutory law prohibit indemnification in certain circumstances. Section VII.A states, in relevant part, that "no indemnification shall be made in connection with a proceeding . . . in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for deliberate misconduct in the performance of that person's duty to the Corporation . . . ." Ex. 1, p. 4. ORS § 707.746(4)(b) prohibits a banking institution from indemnifying a director in connection with any proceeding in which the director was found liable for improperly receiving a personal benefit. Thus, argues Heine, the ultimate determination of whether Heine is entitled to indemnification can only be made after the end of proceedings in the Criminal Action.

Heine argues that to interpret Section VII.F's phrase "person indemnified hereunder" as requiring an indemnification determination *before* an advancement of any expenses is inconsistent with Sections VII.D and VII.A. Thus, Heine asserts, in the context of this case Section VII.B's requirement that a determination be made that the person seeking indemnification meets the applicable standard set forth in Section VII.A is only triggered if the Criminal Action is dismissed without a finding on the merits, thereby rendering the prohibition of indemnification in Section VII.A and the mandatory indemnification under Section VII.D inapplicable.

Heine also argues that *Flood* and *Cox* are distinguishable because in both cases, the advancement provisions unambiguously required an advance determination "that the facts then known to those making the determination would not preclude indemnification." *Flood*, 618 F.3d

at 1113; *see also Cox*, 2005 WL 2457632, *4 (considering nearly identical language).
Section VII.F—the advancement provision at issue here—does not unambiguously provide for
such an advance determination regarding "the facts then known."

Indeed, such language was omitted from the advancement provision contained in the
Oregon Model Business Corporations Act. Morrow, 30 Willamette L. Rev. at 464. The Task
Force Report describing the amendments to the Model Business Corporations Act states that
"[t]he requirement of a determination [that the director met the applicable standard of conduct
for indemnification] in advance is impractical, imposing burdens of investigation and procedural
requirements which could make advances for expenses effectively unavailable." *Id.* Heine argues
that the Bank may have had the ability and discretion to include such a phrase in its advancement
provision, but it chose not to do so. Thus, advancement is not contingent upon an independent
advance determination considering "the facts then known."

In response, the Bank argues that Heine's interpretation of "person indemnified
hereunder" adds words to the text in violation of ORS 42.230, which states that a court must not
"insert what has been omitted." Although this is not a frivolous argument, without those
additional words, the phrase makes no sense in context of the advancement provision. The word
"indemnified" is used in the past tense. Yet, if someone already has been indemnified, that
person has no need of an advancement. Thus, without some words being added, the clause makes
no sense, and it is not appropriate to construe a text in a way that renders it nonsensical or
meaningless. *See* ORS § 42.230 ("[W]here there are several provisions or particulars, such
construction is, if possible, to be adopted as will give effect to all."); *Thomas Creek Lumber &
Log Co. v. State Forester*, 157 Or. App. 204, 213 (1998) ("We do not construe contracts in a
manner that renders a portion of the contract meaningless.").

Thus, the phrase "person indemnified hereunder" necessarily is shorthand and requires additional words. Heine interprets that phrase to mean, in the context of this case, a former director or officer who is a party to a proceeding because of or arising out of his or her former work for the Bank. The Bank interprets that phrase to mean a person who has been determined under the procedures of Section VII.B to meet the standards for indemnification under Section VII.A. Because both interpretations add words to the text, and necessarily do so, ORS § 42.230 does not result in either party's position being validated or eliminated.

Thus Court finds that Heine's interpretation of "person indemnified hereunder" also is a reasonable reading of Section VII.F and does not contradict any other provision in the Articles of Incorporation. Because both Heine's interpretation and the Bank's interpretation of the phrase "person indemnified hereunder" are plausible, and the meaning of the phrase is not clear from the text and context of the Articles of Incorporation, "person indemnified hereunder" is an ambiguous term.

### ii.  Whether the Bank May Consider Heine's Ability to Repay

Heine also argues that the Bank may not deny him advancement based upon his inability to repay advanced expenses. The last sentence of Section VII.F—"The undertaking must be a general personal obligation of the party receiving the advances but need not be secured and may be accepted without reference to financial ability to make repayment"—is taken nearly verbatim from ORS § 707.752(2), which states: "The undertaking . . . must be an unlimited general obligation of the director but need not be secured and may be accepted without reference to financial ability to make repayment."

Heine asserts that this phrase is nearly identical to language the Texas Court of Appeals considered in *In re Aguilar*, 344 S.W.3d 41 (Tx. App. 2011). *See id.* at 45 ("'The written undertaking described above must be an unlimited general obligation of the person but need not

be secured. The written undertaking may be accepted without reference to financial ability to make repayment.'"). In *Aguilar*, the defendant argued that the board of directors had the discretion to refuse advancement if it determined that the plaintiff would not be able to repay the advanced funds. *Id.* at 50. The court reasoned that viewing the advancement provision as a whole, the plaintiff's alternative interpretation was correct. *Id.* at 51. The structure of the first sentence, which provided that the director "'shall be paid . . . after the Corporation receives a . . . written undertaking'" indicated that the defendant has a mandatory duty to advance defenses costs after it receives the undertaking. *Id.* Although the last sentence provided that the undertaking "'may be accepted,'" it did not unambiguously condition the defendant's duty to pay an advancement on whether the defendant accepts the undertaking. *Id.*

The court in *Aguilar* additionally noted that the text stating that the undertaking "may be accepted without reference to financial ability to make repayment" was taken verbatim from a revision to the Model Business Corporation Act. *Id.* The commentary for this section of the revision provides that:

> The revision makes it clear that the undertaking need not be secured and that financial ability to repay is not a prerequisite, on the ground that it is not fair to favor wealthy directors who may be in less need of financial assistance in mounting their defense over directors whose financial resources are modest.

*Id.* (quotation marks omitted).

As in *Aguilar*, here the advancement provision begins with the use of the mandatory "shall," indicating that upon receipt of the undertaking, the Bank must provide for advancement. Given the public policy favoring advancement, the commentary regarding similar language in the Model Business Corporation Act, and the interpretation by the Texas Court of Appeals in *Aguilar*, the Court finds that Heine's reading of the final sentence in Section VII.F is reasonable.

Thus, both parties' interpretations of Section VII.F are plausible, rendering Section VII.F ambiguous. Accordingly, the Court proceeds to step two of *Yogman*.

### 2. Extrinsic Evidence of the Parties' Intent

At step two of the *Yogman* analysis, the trier of fact looks to extrinsic evidence of the contracting parties' intent to interpret the ambiguous contractual provision. *Yogman*, 325 Or. at 363. In this bench trial, the Court is the trier of fact. Neither party, however, submitted any extrinsic evidence of intent. Thus, the Court proceeds to *Yogman* step three.

### 3. Maxims of Contract Interpretation

At step three of the *Yogman* analysis, a court resolves the remaining ambiguity in the contractual provision at issue by applying appropriate maxims of construction. *Id.* at 364. One such maxim of construction is the rule of interpretation against the drafter. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 470-71 (1992); *see also* Restatement (Second) of Contracts § 206 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). Here, neither party submitted evidence regarding who drafted the Articles of Incorporation. Without such evidence, it is unknown what role either Heine or the Bank may have played in drafting the document or the ambiguous provision. Thus, the Court cannot apply this maxim of construction.

ORS § 42.260, titled "Ambiguous terms," provides another maxim of construction. *See Copeland Sand & Gravel v. Estate of Dillard*, 267 Or. App. 791, 799 (2014) (applying ORS § 42.260 at step three of the *Yogman* analysis). ORS § 42.260 states, in relevant part, that "[w]hen different constructions of a provision are otherwise equally proper, that construction is

to be taken which is most favorable to the party in whose favor the provision was made."[8]

Before a party is entitled to the application of the second sentence of ORS § 42.260 in their

favor, that party must demonstrate that their construction of a provision is at least "equally

proper" in comparison with the opposing party's construction. *See Peace River Seed Co-*

*Operative, Ltd. v. Proseeds Marketing, Inc.*, 355 Or. 44, 70 n.17 (2014).

The Court finds that the maxim of construction described in ORS § 42.260 is

appropriately applied in this case because both Heine's and the Bank's interpretations of the

advancement provision at issue are equally proper. Thus, because advancement and

indemnification are generally viewed as rights of a director or officer and made to favor a

director or officer, *see generally* Rossman, 85 U. Det. Mercy L. Rev. at 30-31, Heine's

construction of the advancement provision must prevail at step three of *Yogman*. Thus, Heine is

---

[8] The full text of ORS § 42.260 reads as follows:

> When the terms of an agreement have been intended in a different
> sense by the parties, that sense is to prevail, against either party, in
> which the party supposed the other understood it. When different
> constructions of a provision are otherwise equally proper, that
> construction is to be taken which is most favorable to the party in
> whose favor the provision was made.

The Court notes that both ORS § 42.260 and ORS § 42.230, which the Court applied at step one
of the *Yogman* analysis, appear in ORS Chapter 42. Chapter 42 provides statutory rules for the
interpretation of writings. Oregon courts, however, apply the two statutes at different steps of the
*Yogman* analysis. Oregon courts consider ORS § 42.230 at step one. *See Williams*, 351 Or.
at 379; *Oregon v. Heisser*, 350 Or. 12, 25 n.9 (2011); *Yogman*, 325 Or. at 361. Courts generally
apply the second sentence of ORS § 42.260 at step three. *See Copeland*, 267 Or. App. at 799;
*Crossroads Plaza, LLC v. Oren*, 176 Or. App. 306, 310 (2001) (holding that because a lease
provision "is ambiguous and there is no evidence that bears on the ambiguity, it must be
construed in favor of defendants, the parties in 'whose favor the provision was made.'") (quoting
ORS § 42.260). *C.f. Portland Fire Fighters' Ass'n, Local 43 v. City of Portland*,
181 Or. App. 85, 94 n.6 (2002) (citing ORS § 42.260 and stating that "[s]tatutory rules that
authorize consideration of extrinsic evidence may be implicated at the second level of analysis
rather than the first or third.").

entitled to the advancement of "reasonable expenses incurred" in the Criminal Action and judgment in his favor on his first and third claims.

## C.  Whether Heine's Expenses in the Criminal Proceeding are Reasonable

The Articles of Incorporation permit indemnification of "reasonable expenses (including attorney's fees) . . . actually and reasonably incurred by the person to be indemnified . . . ." Ex. 1, p. 4. Similarly, ORS § 707.746(5) provides that indemnification is limited to "reasonable expenses incurred in connection with the proceeding." The Court first considers whether the hourly rates of the New York attorneys at Pryor Cashman as set forth in the engagement agreement are reasonable. The Court then considers whether the retainer requested by Pryor Cashman is a reasonable expense "incurred" under the Articles of Incorporation.

### 1.  Pryor Cashman's Hourly Rates

The Court looks to the prevailing market rate to set reasonable hourly rates for Heine's defense in the Criminal Action. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (noting that the "'prevailing market rates in the relevant community' set the reasonable hourly rate"). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* (quotation marks omitted). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, . . . particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

At trial, the Court accepted the declaration and supplemental declaration of Ron Hoevet ("Hoevet") into evidence. Hoevet is a partner at Hoevet Olson Howes, PC, a law firm in

Portland, Oregon that specializes in criminal defense. Dkt. 47 at 2. Hoevet stated that, according

to the Oregon State Bar 2012 Economic Survey, an hourly billing rate of $429 is in the 95th

percentile for criminal defense attorneys in Portland. Dkt. 47 at 3-4. Hoevet opined that an

hourly billing rate of $550 and an initial evergreen retainer of $50,000 are reasonable to defend

Heine in the Criminal Action. Dkt. 47 at 4. Hoevet also stated that the $585 hourly rate of Per

Ramfjord ("Ramfjord")—Heine's expert witness—is the top hourly rate charged for white collar

criminal defense in Portland, Oregon. Dkt. 48 at 1.

  The Court also accepted in evidence Ramfjord's expert report. Dkt. 43. Ramfjord is a

partner at Stoel Rives, LLP in Portland, Oregon. Dkt. 43 at 3. A principal focus of his work at

Stoel Rives is white collar criminal defense work. Dkt. 43 at 3. Ramfjord opined that Alberts's

rate of $640 per hour was reasonable in this community in light of Alberts's combination of

criminal and banking law expertise and his firm's capabilities. Dkt. 43 at 6. In determining the

appropriateness of Alberts's rate, Ramfjord considered Alberts's skills, reputation, and

experience, as well as the nature of the work to be performed. Dkt. 43 at 6. Ramfjord also based

his conclusion on the 2014 Morones Survey of Commercial Litigation Fees for Portland, Oregon,

which listed $621 per hour as the average rate for the highest category of litigators in 2014,

before any 2015 rate increases. Dkt. 43 at 7. Ramfjord explained that Alberts's rate is not

significantly different from the rates charged by other experienced white-collar criminal defense

lawyers in Portland or Seattle who work in large offices and have the capability to handle cases

involving the volume of documents at issue in the Criminal Action. Dkt. 43 at 7.

  In light of Alberts's criminal and banking law expertise, the 2014 Morones Survey

average rate of $621 per hour for the highest category of litigators in Portland is comparable to

Alberts's hourly rate of $640 in 2015. Thus, the Court finds that Alberts's rate of $640 in 2015

dollars is not significantly higher than the 2014 Morones Survey average rate of $621 for top litigation attorneys in Portland. The Court additionally finds that, given the age of the Oregon State Bar 2012 Economic Survey, the 2014 Morones Survey is more persuasive. Thus, the Court concludes as both a Finding of Fact and a Conclusion of Law that $640 in 2015 dollars is the upper limit of a reasonable rate for Heine's defense in the Criminal Action.

### 2. Pryor Cashman's Proposed Retainer

The Articles of Incorporation permit the advancement of "[e]xpenses incurred." Ex. 1, p. 6. The purpose of a retainer is to ensure payment for future services that have not yet been rendered. *See* "Retainer," Black's Law Dictionary (10th ed. 2014) (providing that "retainer" may be defined as "[a]n advance payment of fees for work that the lawyer *will perform in the future*.") (emphasis added). Because a retainer serves as a guarantee to pay expenses incurred in the future, it is not itself an "expense incurred," even if Heine contractually agreed to pay such a retainer. Additionally, nothing in the Articles of Incorporation compels the Bank to advance a "retainer" to a director or officer. Thus, Heine is not entitled to any advancement of a retainer.[9]

## D. The Bank's Affirmative Defenses

The Bank asserts setoff, recoupment, and estoppel as affirmative defenses. Dkt. 26 at 7. The Court first examines the Bank's arguments regarding setoff and recoupment, and then turns to the Bank's estoppel argument.

### 1. Setoff and Recoupment

The Bank argues that Heine's $141,654.39 debt to the Bank should be setoff, or recouped, against any advancement of expenses the Bank makes to Heine in connection with the

---

[9] The engagement agreement states that Pryor Cashman LLP will send Heine monthly statements setting forth the fees and expenses incurred in the previous month. Ex. 3, p. 3. The balance on each monthly statement is due no later than 30 days after the date of the bill. Ex. 3, p. 3. The Court finds that it is commercially reasonable to require monthly payments.

Criminal Action. Setoff and recoupment can "liquidat[e] the whole of part of [a] plaintiff's claim in situations where an independent action [or counterclaim] would not lie." *Rogue River Mgmt. Co. v. Shaw*, 243 Or. 54, 60 (1966). Setoff is an equitable defense applied within the court's discretion. *See Bennington v. Inland Investments Co.*, 153 Or. App. 209, 221 (1998). A court may consider a party's insolvency in determining whether setoff is equitable. *Pearson v. Richards*, 106 Or. 78, 93-94 (1922).

A defendant may raise the defense of setoff when the plaintiff owes him a contract debt "*independent of and unconnected with the cause of action* set forth in the complaint." *Oregon ex rel. Key W. Retaining Sys., Inc. v. Holm II, Inc.*, 185 Or. App. 182, 190 (2002) (quotation marks omitted). Recoupment, by contrast, is "confined to matters arising out of and connected with the transaction upon which the action is brought." *Rogue River*, 243 Or. at 58-59. Here, the debt Heine owes the Bank under the loan agreement and the Elan credit card account is independent of and unconnected with the advancement of expenses under the Bank's Articles of Incorporation. Thus, setoff—and not recoupment—is the appropriate vehicle for any "netting out" of Heine's obligations to the Bank.

The Bank argues that setoff is equitable here because Heine is insolvent and Heine agrees that it is more likely than not that he will be unable to repay any advanced expenses to the Bank in the event that it is ultimately determined he is not entitled to indemnification. Several courts have concluded, however, that advancement proceedings are inappropriate forums for setoff and recoupment. For example, in *Kaung v. Cole Nat'l Corp.*, the Delaware Supreme Court held that "an advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment." 884 A.2d 500, 510 (Del. 2005); *see also Westar Energy, Inc. v. Wittig*, 235 P.3d 515, 525-26 (Kan. Ct. App. 2010) (reasoning that "advancement is meant to

PAGE 28 – OPINION AND ORDER

alleviate an officer from personally providing the enormous resources required to litigate against corporate charges. . . . Permitting an offset or recoupment *during this process* undermines that objective of relieving the accused wrongdoer from making the expenditures.").

Additionally, in *Miller v. U.S. Foodservice, Inc.*, the district court concluded that advanced legal expenses were not properly subject to setoff or recoupment. 405 F. Supp. 2d 607, 620 (D. Md. 2005). The defendant corporation asserted sought recoupment and setoff for the plaintiff's breach of his fiduciary duties and breach of his employment agreement with the defendant. *Id.* at 619-20. The defendant argued that it should be allowed to withhold any advancement of legal fees and expenses it owed the plaintiff against its counterclaims until both parties' right and obligations were finally adjudicated. *Id.* at 620. Following the approach of Delaware courts, the *Miller* court reasoned that "[i]f a corporation can circumvent its obligation to pay an officer's legal fees simply by filing a counterclaim against the officer, then advance indemnification provisions will be rendered virtually null whenever a corporation wishes to avoid that obligation." *Id.*

Here, the Bank argues that *Kaung* and *Westar* are distinguishable from this case because in both *Kaung* and *Westar*, the indemnitor was seeking to recoup already advanced defense costs. Central to both courts' conclusions, however, was the public policy favoring advancement. *See, e.g.*, *Kaung*, 884 A.2d at 509 ("Rights to indemnification and advancement are deeply rooted in the public policy of Delaware corporate law in that they are viewed less as an individual benefit arising from a person's employment and more as a desirable mechanism to manage risk in return for greater corporate benefits."). Because courts consider setoff to be inconsistent with the advancement of legal fees in the corporate setting, the Court finds that allowing the Bank to

setoff Heine's debts against the advancement of legal expenses Heine incurs in the Criminal Action would not be equitable.[10]

### 2. Estoppel

The Bank also argues that Heine's prior misrepresentations to the Bank regarding his creditworthiness, and his subsequent default, prevent Heine from making the undertaking to repay the advancement in the event it is ultimately determined that he is not entitled to indemnification. If Heine is precluded from making this undertaking, then he has not satisfied a condition precedent to being eligible to receive advancement.

The equitable estoppel doctrine is "'employed to prevent one from proving an important fact to be something other than what by act or omission he has led another party justifiably to believe.'" *State v. Bush*, 174 Or. App. 280, 292 (2001) (quoting *Stovall v. Sally Salmon Seafood*, 306 Or. 25, 33 (1988)). Under Oregon law, the equitable estoppel doctrine precludes a person, by virtue of his conduct, from asserting a right which he otherwise would have had. *Day v. Adv. M&D Sales, Inc.*, 336 Or. 511, 518 (2004) (*en banc*). Equitable estoppel has five elements: (1) there must be a false representation; (2) the representation must have been made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) the representation must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon the representation. *Id.* at 518-19.

The Bank argues that Heine should be estopped from asserting that he will undertake to repay the advancement because he previously made a false representation of creditworthiness in

---

[10] The Court has not yet decided whether to award attorneys' fees in this matter under Heine's Second Claim. The Court expresses no opinion on whether setoff would be appropriate, or equitable, if the Court were to award fees in favor of Heine on his Second Claim.

the loan agreement and then defaulted on the loan. The loan agreement states that "I ('Borrower') promise to pay to The Bank of Oswego ('Lender'), or order, in lawful money of the United States of America, the principal amount of One Hundred Thousand & 00/100 Dollars ($100,000.00), together with interest on the unpaid principal balance from October 20, 2014, until paid in full." Ex. 201, p. 1. The statement "I promise to pay," however, is not equivalent to "I have the current ability to pay." Because the statement "I promise to pay" was not a false representation, it does not form the basis of estoppel.

The loan agreement also contains a clause stating: "Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency." Ex. 201, p. 2. The Bank argues that Heine's failure to provide a statement that he would be unable to repay the loan was a false representation by Heine. The loan agreement clause, however, does not require Heine to notify the Bank that he could not repay the loan. Thus, Heine's failure to provide such a statement is not a false representation.

Additionally, Heine did not make any false statements regarding his inability to repay the amount of the loan. To the contrary, Heine's letter dated January 20, 2015, to Andrews stated, "I am not able to continue making $720 monthly payments on my PLOC. . . . When and if my circumstances change, I will do my best to fulfill my obligation to the bank." Ex. 208. Finally, Section VII.F does not require a person seeking advancement to undertake or represent that he is *able* to repay the advancement. Rather, the Articles of Incorporation simply require "an undertaking by or on behalf of such person *to repay* such expenses." Ex. 1, p. 6. Because the Bank has not identified any false representations made by Heine, the Bank's estoppel argument fails.

**CONCLUSION**

Based on the evidence presented at trial and the record in this case, the Court finds that Heine is entitled to partial judgment in his favor on his First and Third Claims. Moreover, Heine's existing debts to the Bank under the Bank's counterclaims may not be setoff against any advancement of expenses that the Bank is required to make to Heine in connection with the Criminal Action.

**IT IS SO ORDERED**.

DATED this 13th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge